# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **BALANCECXI, INC. D/B/A ZACOUSTIC** | § | |
| | § | |
| **V.** | § | **1-19-CV-767-RP** |
| | § | |
| **INTERNATIONAL CONSULTING AND** | § | |
| **RESEARCH GROUP, LLC, et al.** | § | |

## ORDER

Before the Court is Plaintiff Balance CXI, Inc. d/b/a/ Zacoustic's Motion to Compel (Dkt. No. 12) and all accompanying responses and replies. The District Court referred the discovery dispute to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules. The Court held a hearing on March 5, 2020, and ruled on many of the issues from the bench. This Order is entered to memorialize those rulings, and to rule on those matters taken under advisement at the hearing.

### I. Background

This case alleges that Defendants Christopher DeSimone and Adam Oldfield stole trade secrets from, and violated their non-competition and non-solicitation agreements with, their former employer, software development company BalanceCXI. DeSimone and Oldfield left their employment with BalanceCXI on January 15, 2019. On April 5, 2019, through a letter sent by its counsel, BalanceCXI directed DeSimone and Oldfield to return all company property, including their laptop computers, by April 9, 2019. The letter contained a specific directive that:

> You must refrain from deleting or modifying any programs, data, or files on the above-referenced laptop computer, as these actions constitute not only spoliation of evidence but also destruction of Company property. You must further refrain from making any copies of any source code, files, programs, or other intellectual property stored on the computer.

Dkt. No. 12-3 at 5. On the evening of April 8, 2019, Defendants' current counsel emailed BalanceCXI's counsel to notify him that he had been hired to represent DeSimone and Oldfield. Dkt. No. 12-4 at 5. He stated that he would be in touch in the morning to arrange the return of the laptops. *Id.* In an email exchange the next day, this attorney indicated, among other things, that "Mr. Oldfield will need to remove any personal files from his device" before he returned it. Dkt. No. 12-4 at 4. This resulted in an immediate response from BalanceCXI's counsel reminding the attorney that "your clients are not authorized to delete any files from the computers—whether he (or they) contend they are personal or otherwise," and indicated that if there were personal files on the computers, BalanceCXI would come up with a procedure to deal with those. *Id.* at 3. Ultimately, BalanceCXI received Oldfield's laptop on April 10, 2019, and DeSimone's laptop on April 11, 2019. Dkt. No. 12-2.

Upon receipt of the laptops, BalanceCXI hired R3 Digital Forensics, a computer forensics firm, to perform a forensic analysis of the computers. The analysis shows that on April 9, 2019, DeSimone copied a large number of files from his BalanceCXI laptop. According to the forensic report, at least three separate storage devices were connected to the computer on this date, and while the drives were connected, 39 folders were accessed, including folders containing BalanceCXI's marketing, competitive analysis, strategy, and finance information. The forensic report also reveals that at least five subfolders of the "C:/Chris/Desktop/Zacoustic" folder reflect last modified times after a storage device was connected, indicating that items from these folders were copied to the portable storage device. In addition, the forensic analysis showed that on April 9, 2019, DeSimone also deployed the "CCleaner" software to delete thousands of files and folders from the laptop. According to the report, CCleaner was launched from a Samsung FIT storage device and run on the

company laptop at least three times on April 9, 2019, with at least 14,000 files and folders deleted from the computer.

The forensic report of Oldfield's computer revealed that he engaged in similar activity, downloading his entire BalanceCXI email account (adam.oldfield@zacoustic.com), and connecting a three terabyte Western Digital USB external hard drive to the BalanceCXI laptop twice on April 9, 2019, during which time he created 17 folders in a root folder named "Z Backup." The forensic report also revealed that while the external devices were connected, 48 folders were accessed, including folders named GitHub1 that likely contained BalanceCXI's source code. The report also revealed that after Oldfield's last day of employment, four GitHub folders were copied to the C drive of the laptop. Like DeSimone, Oldfield also used "CCleaner" to delete files from the laptop, in his case at least 266,283 files and folders. This lawsuit followed shortly thereafter, on July 30, 2019.

## II. Procedural History

After several months spent unsuccessfully trying to negotiate the return of the material copied or deleted from the laptops, on October 25, 2019, BalanceCXI served its First Written Discovery on Defendants. On November 25, 2019, Defendants responded, but did not produce any documents and did not verify their interrogatory answers. In the cover e-mail delivering the responses, Defendants' counsel stated: "My clients are willing to produce the external drives on which they saved their files from their BalanceCXI laptops, pursuant to the forensic protocol that you proposed, and they are sending those to me this week." BalanceCXI again sent the proposed production protocol to Defendants for signature, along with a draft protective order. As of the dates of the filing of the Motion to Compel (December 16, 2019), Defendants had yet to agree or respond to the proposed protocol or protective order.

Defendants' initial response to the motion to compel relied on Federal Rule of Civil Procedure 5(b)(2)(E), and argued that because BalanceCXI served the nine discovery requests on Defendants electronically (via facsimile), the service was ineffective as a matter of law and they did not have any obligation to respond to any of the requests. Dkt. No. 22.[1] In January, Defendants sought leave to amend their response, which was granted on January 31, 2020, and only then did they address the substance of their objections to the discovery.[2]

Following additional responses, the hearing was set. In setting the hearing, the Court stated that its

> review of the motion, and particularly the 31-page appendix attached to the reply, suggests that there are many issues presented in the motion that should not require court resolution, assuming the parties are working diligently and in good faith to

---

[1]Defendants argued that "consent to electronic service under Fed. R. Civ. P. 5(b)(2)(E) must be expressly given, in writing, and it cannot be implied," (citing *Moore v. Valero Ardmore Refinery*, 2015 WL 129985, at *2 (N.D. Tex. 2015)), and they had not given such written consent. As the Court noted at the hearing, there is no point in addressing the alleged service deficiency at this stage of the dispute, since the Defendants are clearly on notice of the requests, have responded to the motion to compel, and have been (though sporadically, and too slowly) producing responsive material. Having said this, if the Court had reached the merits of the service argument, it would have rejected it. The Court's Administrative Policies regarding electronic filing provide that:

> Registration as a Filing User constitutes consent to electronic service on all documents as provided both in these procedures and by Rule 5(b)(2)(E), Federal Rules of Civil Procedure, and Rule 49(b), Federal Rules of Criminal Procedure.

ADMINISTRATIVE POLICIES AND PROCEDURES FOR ELECTRONIC FILING IN CIVIL AND CRIMINAL CASES IN THE UNITED STATES COURT FOR THE WESTERN DISTRICT OF TEXAS, Section 6(c). Defendants' counsel is a registered Filing User. Thus, he has consented to service by electronic means "on all documents" not just received through CM/ECF ("as provided in these procedures"), but also as provided "by Rule 5(b)(2)(E)." The service of the discovery was adequate.

[2]Defendants recently filed their Opposed Motion to File a Surreply. Dkt. No. 39. Though the arguments therein did not change the Court's thinking on these issues, so the record is complete, the Court **GRANTS** the motion (Dkt. No. 39) and **DIRECTS** that the Surreply (Dkt. No. 39-1) and attached exhibits be **FILED**.

4

> resolve their discovery disputes. Accordingly, the parties are directed to confer prior to the hearing and reach agreement on as many of the disputed issues as they can. The parties are WARNED that if the Court determines at the hearing that a party's position is not substantially justified, it will award sanctions against that party or their counsel.

Dkt. No. 43. Consistent with this admonition, the parties conferred in the days before the hearing, and represented at the hearing that they had reached agreement as to their disputes on Interrogatories 1-4, 9, 11, and 12, as well as to Requests for Production 34-36, 40-42, 54, 59, and 60. The details of those agreements were stated on the record at the hearing.

### IV. Motion to Compel

BalanceCXI points to this procedural history to argue that, despite having served discovery five months ago, it took not only the filing of a motion to compel, but also the Court setting a hearing on the motion warning of potential sanctions, to get the Defendants to comply with their obligations under the Federal Rules of Civil Procedure. They request that the Court not only compel the Defendants to produce the material sought in the remaining disputed requests, but also to award BalanceCXI the fees and costs it expended in getting to, and attending, the motion hearing. The Court will first address the remaining disputed issues, before reaching the issue of sanctions.

**A.     Metadata**

BalanceCXI has requested that Defendants produce all responsive electronically stored information in .TIFF format with a corresponding load file, containing metadata fields. Defendants object to this, and assert that production of the records in .pdf format is sufficient. BalanceCXI responds that under Rule 34, it is entitled to receive electronically stored information from Defendants in the requested form. Rule 34 states that if the responding party objects to the requested

format, it is to file an objection to the format, and state the form it intends to use. *Id.* at 34(b)(2)(D). As noted in the commentary,

> If the requesting party is not satisfied with the form stated by the responding party, or if the responding party has objected to the form specified by the requesting party, the parties must meet and confer under Rule 37(a)(2)(B) in an effort to resolve the matter before the requesting party can file a motion to compel.

FED. R. CIV. P. 34, Advisory Committee Note to 2006 Amendments. Because the parties have been unable to agree, the Court must resolve the issue. In this case, that is not difficult. Because this case involves the theft of trade secrets, and significant issues regarding Defendants' copying and deleting files immediately prior to returning their company laptops, metadata is likely to be important to the case. BalanceCXI's request that Defendants produce any ESI in .TIFF format with a corresponding load file, containing metadata fields, is reasonable. The Court therefore overrules Defendants' objection, and **ORDERS** Defendants to produce electronically stored information as noted.

### B. Additional Devices

Though the Defendants stated at the hearing that they agreed to produce all of the storage devices the forensic examination revealed had been connected to the laptops prior to their return, or to provide a sworn explanation regarding why they could not produce any particular device, BalanceCXI informed the Court that its recent forensic examination of two of the storage devices indicated that there may well be other devices or computers that will need to be searched. As the Court explained at the hearing, it could not order the production of yet unidentified electronic devices. However, the Court **NOTIFIES** the Defendants that to the extent the forensic examination of electronic devices reveals that other devices may have been involved in the transmission, storage, or alteration of BalanceCXI's data that was contained on the company laptops, actions taken to

6

impede or delay the production of those devices will not be tolerated. The Defendants dug themselves a deep hole through their actions immediately prior to returning their laptops, and if they wish to avoid making that hole deeper, the Court strongly recommends that the Defendants unfailingly comply with their discovery obligations moving forward. Failure to do so will result in the Court imposing monetary, and perhaps other, sanctions against them.

C.       **Interrogatory No. 7 and Requests for Production 40-42**

These discovery requests ask Defendants to identify and produce documents related to current or former customers of ICAR, DeSimone, and Oldfield. Defendants object that these requests are overbroad as they delve into information regarding current business relationships that are not relevant to the theft of trade secret and non-solicitation agreement claims. Defendants note that they only have one client, and they have confidentiality obligations to the client. The Defendants' concerns regarding confidentiality are already addressed under the Protective Order, which allows them to designate such information as "confidential" or "attorneys eyes only," thereby maintaining the confidentiality of the information. Having said this, some of the material within the scope of these requests will not be needed by Balance CXI to prove its case. Accordingly, The Court **OVERRULES IN PART** Defendants' objections and **ORDERS** Defendants to produce the contract through which they are doing its work with this customer,[3] the date they first sought out, or were solicited to do the work covered by the contract, and the ultimate customer's name.

---

[3]Defendants' attorney represented that there are a series of contracts separating ICAR and the individual defendants from the ultimate client on this work, and that they do not have a contract with that client, but instead have been subcontracted by a party who either itself has a contract with the client, or is also a subcontractor. As stated at the hearing, and as noted in the text, though Defendants need only produce the contract to which they are a party, they must also identify (subject to an "attorneys eyes only" designation) the ultimate client the work is being done for.

7

**D.      Request for Production No. 30**

RFP 30 requests "all communications, including but not limited to any Agreement or Promise, between any or all Defendants and any current or former BalanceCXI employee." Defendants object to the timeframe of this request asserting the proper dates are from January 1, 2019, through the present. The Court **OVERRULES** Defendants' objections and **ORDERS** them to produce all responsive communications from July 1, 2016, to the present for ICAR and DeSimone, and from March 13, 2017, to the present for Oldfield.

**E.      Requests for Production 48 and 49**

RFPs 48 and 49 request documents related to meetings involving Oldfield and DeSimone where BalanceCXI or its current or former customers were discussed. The Defendants' objections are **OVERRULED** and Defendants are **ORDERED** to produce responsive documents.

**F.      Requests for Production 50-52**

RFPs 50-52 request documents related to ICAR, DeSimone, and Oldfield's financial records. Defendants object that this request is overly broad and requests confidential personal financial information that is not relevant to BalanceCXI's claims. BalanceCXI contends that the records are relevant to its damages for its trade secret misappropriation claim. Before the Court will require the production of personal financial records, BalanceCXI will need to demonstrate more specifically the trade secrets it believes Defendants have misappropriated, and connect that more directly to the financial records sought. Accordingly, the Court will sustain the objection in large part, but will require that Defendants produce any invoices or other billing documents Defendants have generated for any work they have performed from January 15, 2019, to the present. Defendants may redact the specific dollar amounts reflected on the invoices.

## V. Attorneys' Fees

BalanceCXI requests the award of its attorneys' fees and costs associated with filing the motion to compel and obtaining the production of documents, pursuant to Federal Rule of Civil Procedure 37(a)(5). In relevant part, Rule 37 states:

> If [a motion to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

FED. R. CIV. P. 37(a)(5) (emphasis added). As mentioned at the hearing, the conduct of the Defendants regarding their laptops documented in the evidence now before the Court is very concerning. Coupled with the difficulty BalanceCXI has had in obtaining the production of records, and the fact that very little was produced until immediately prior to the Court's hearing, the Court believes an award of fees is likely justified. Further, the Court believes the award would properly be made against the Defendants, based on the presently available information. The Court, however, will reserve ruling on that issue until the discovery mandated by this order has taken place. When that discovery is complete, BalanceCXI shall notify the Court. The Court will at that time issue a schedule for any additional briefing on the issue the parties may wish to submit. The conduct of the Defendants in carrying out the orders contained herein will be a factor in the Court's decision on whether, and to what extent, it should award fees and costs.

## VI. Order

**IT IS THEREFORE ORDERED** that Plaintiff Balance CXI, Inc. d/b/a/ Zacoustic's Motion to Compel (Dkt. No. 12) is **GRANTED IN PART and DENIED IN PART,** as more specifically

set forth above. All discovery mandated by this order shall be completed by March 27, 2020, absent agreement of the parties otherwise.

SIGNED this 13th day of March, 2020.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE