UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BALANCECXI, INC. D/B/A ZACOUSTIC, | § § § | |
| *Plaintiff* | § | |
| V. | § § | Civil Action No. 1:19-cv-767-RP |
| INTERNATIONAL CONSULTING & RESEARCH GROUP, LLC, CHRISTOPHER DESIMONE, AND ADAM OLDFIELD | § § § § § § | |
| *Defendants* | | |

## DECLARATION OF ADAM SENCENBAUGH

1.  My name is Adam Sencenbaugh. I am a partner at the law firm of Haynes and Boone, LLP ("**Haynes and Boone**") and lead counsel for Plaintiff BalanceCXI, Inc. d/b/a Zacoustic ("**BalanceCXI**") in this action against Defendants International Consulting & Research Group, LLC ("**ICAR**"), Christopher DeSimone ("**DeSimone**"), and Adam Oldfield ("**Oldfield**") (collectively, "**Defendants**"). I am over twenty-one (21) years of age and am fully competent to make this declaration. I have prepared this Declaration for the purpose of testifying regarding the award for reasonable attorney's fees. As lead attorney in this case, I am personally familiar with the services that attorneys at Haynes and Boone provided to BalanceCXI in this matter. These services were either performed by me or with my knowledge and under my supervision. Therefore, the facts stated in this declaration are within my personal knowledge and are true and correct.

A.    **Experience and Qualifications.**

2.    I graduated from the University of Texas School of Law, where I was a member of the *Texas Law Review*, with honors and the Order of the Coif distinction in 2007. I am an attorney licensed to practice law in the state of Texas since 2007 and the state of Mississippi since 2008. I am licensed to practice in the United States Court of Appeals for the Fifth Circuit; the United States District Courts for the Eastern, Southern, and Western Districts of Texas; and the United States District Courts for the Southern and Northern Districts of Mississippi. Prior to entering private practice, I clerked for the Honorable Keith Starrett, United States District Judge for the United States District Court for the Southern District of Mississippi, from 2007 to 2008.

3.    My practice is devoted to environmental, labor and employment, and litigation matters, including numerous trade secrets disputes. I am board certified in labor and employment law by the Texas Board of Legal Specialization. I have also been recognized by *Texas Super Lawyers Rising Stars*, Thomson Reuters, for Employment Defense Litigation and Environmental Defense Litigation, 2015, and Business Litigation, 2014 to 2020. I was also recognized as a Labor and Employment Star by *Benchmark Litigation*, Euromoney Institutional Investor PLC, in 2021. A true and correct copy of my firm biography is attached as **Exhibit B.1**.

4.    In this matter, I have been primarily assisted by Henson Adams, associate in the labor and employment and litigation practice groups at Haynes and Boone. Mr. Adams graduated from the University of Texas School of Law, where he was the Managing Editor of the *Texas Review of Entertainment and Sports Law*, with honors and the Order of the Barristers distinction in 2016. Mr. Adams has been licensed to practice law in the State of Texas since 2016 and is licensed to practice in the United States District Court for the Western District of Texas. Mr. Adams interned for the Honorable Judge Craig Gargotta, United States Bankruptcy Court for the

Western District of Texas, in 2014. Mr. Adams interned for the Honorable Judge Jeffrey Boyd, Justice for the Supreme Court of Texas, in 2015. Mr. Adams has been recognized by *Best Lawyers*, Woodward/White, Inc., "Ones to Watch" for Labor and Employment Law in 2021 and by *San Antonio Scene Magazine* as a Rising San Antonio Star Lawyer in 2020 and 2021. A true and correct copy of Mr. Adams's firm bio is attached as **Exhibit B.2**.

5. I have also been assisted in this matter by Iris Gibson, counsel in the litigation practice group of Haynes and Boone. Ms. Gibson graduated from the University of Texas School of Law, where she was a member of the *Texas Law Review*, with high honors and the Order of the Coif distinction in 2002. Ms. Gibson has been licensed to practice law in the State of Texas since 2002 and is licensed to practice in the United States Court of Appeals for the Fifth Circuit and the United States District Court for the Western District of Texas. In 2010, Ms. Gibson received the J. Chrys Dougherty Legal Services Award for her pro bono work related to access for justice. A true and correct copy of Ms. Gibson's firm bio is attached as **Exhibit B.3**.

6. I have also been assisted by Chrissy Long, associate in the labor and employment and litigation practice groups at Haynes and Boone. Ms. Long graduated from the University of Texas School of Law, where she was a member of *The Review of Litigation*, with honors in 2017. Ms. Long has been licensed to practice in the State of Texas since 2017. Ms. Long is licensed to practice in the United States District Court for the Eastern and Northern Districts of Texas. Prior to private practice, Ms. Long clerked for the Honorable Paul Green, Justice for the Supreme Court of Texas, from 2017 to 2018. A true and correct copy of Ms. Long's firm bio is attached as **Exhibit B.4**.

7. Our team of attorneys also received assistance from Mike Brockwell, a Trial Services Consultant with Haynes and Boone. Mr. Brockwell has been with Haynes and Boone

since 2001 and provided valuable assistance in preparation of BalanceCXI's presentation at the evidentiary hearing on its Motion for Sanctions.

**B.      Time Records and Invoices.**

8.      I supervised the work performed by each of the attorneys and staff in this matter. The nature of the services these attorneys and staff provided is fully and fairly described in the contemporaneous time records kept by Haynes and Boone in connection with this matter and in the periodic bills for those services that were sent to BalanceCXI. Time entry records are kept by the firm in the regular course of business, and it was the regular course of business of the firm for each time keeper to make the time-entry records or transmit information thereof to be included in such records. The time-entry records were made at or near the time that the hours were worked or reasonably soon thereafter. The firm then generates invoices containing the time-entry records.

9.      Without waiving any applicable attorney-client privilege or work product, true and correct redacted copies of the invoices for work performed in November 2019 (Invoice No. 21409688), December 2019 (Invoice No. 21416367), January 2020 (Invoice No. 21425635), February 2020 (Invoice No. 21424660), March 2020 (Invoice No. 21424204), April 2020 (Invoice No. 21428969), May 2020 (Invoice No. 21435038), and June 2020 (Invoice No. 21437738) are attached as **Exhibit B.5**. Any time entry for which BalanceCXI does not seek fees it incurred in filing and arguing the Motion to Compel (Dkt. No. 12) and the Motion for Sanctions (Dkt. No. 66) has been redacted.[1]

10.     True and correct copies of the invoices for the work performed by R3 Digital Forensics are attached as **Exhibit B.6**.

---

[1] BalanceCXI reserves the right to seek those redacted attorneys' fees and expenses related to its underlying claims that provide for an award of attorneys' fees and expenses to BalanceCXI.

11.     For ease of reference, an appendix that includes a summary and a delineation of attorneys' fees and expenses by category is attached as **Exhibit A**.

12.     A summary of the time Haynes and Boone attorneys and staff worked on filing and arguing the Motion to Compel and Motion for Sanctions, as well as the corresponding fee amounts, is as follows:

| Summary of Attorneys' Fees by Time Keeper | | | | |
|---|---|---|---|---|
| Time Keeper | Title | Rate | Hours Billed | Fee |
| Adam H. Sencenbaugh | Partner | $725.00 | 192.8 | $139,780.00 |
| Iris Gibson | Counsel | $700.00 | 38.1 | $26,670.00 |
| Henson Adams | Associate | $495.00 | 276.7 | $136,966.50 |
| Chrissy Long | Associate | $495.00 | 17.9 | $8,860.50 |
| Mike Brockwell | Trial Services Consultant | $350.00 | 5.5 | $1,925.00 |
| | | Grand Total | 531 | $314,202.00 |

**C.     Reasonableness of Rates.**

13.     For its work in connection with the Motion to Compel and Motion for Sanctions, Haynes and Boone charged BalanceCXI at the following hourly rates: (a) Adam H. Sencenbaugh: $725.00; (b) Iris Gibson: $700; (c) Henson Adams: $495.00; (d) Chrissy Long: $495.00; and (e) Mike Brockwell: $375.00. On information and belief, these hourly rates are comparable to or less than those charged by comparable, full-service law firms in the Austin, Texas community for similar services rendered by lawyers with my experience as well as the experience of Ms. Gibson, Mr. Adams, and Ms. Long.  Mr. Brockwell's hourly rate is comparable to or less than those charged by trial services consultants with his experience. The rates charged by R3 Digital Forensics are also reasonable for forensic examiners based on the experience and reputation of R3 Digital Forensics.

14.     I base these statement on my close to 15 years of practicing law that includes: (a) litigating numerous matters, including trade secrets matters, in state and federal court,

including within the Western District of Texas; (b) serving as President of the Civil Litigation Section of the Austin Bar Association; (c) serving as Program Director and Executive Committee member of Austin's Lloyd Lochridge American Inn of Court; (d) serving as a member of the American Bar Association's Equal Employment Opportunity Committee; (e) reviewing billing rate information for comparable law firms during litigation; and (f) retaining forensic examiners for trade secrets related matters.

15. I also base these statements on my review of the Thomson Reuters Peer Monitor data for AmLaw 100 law firm average hourly rates within Austin, Texas for the years 2019 through 2020 for the litigation practice area. The Peer Monitor is created using an automated process that collects data from over 200 participating firms' financial management systems.[2] Haynes and Boone subscribes to the Peer Monitor and through its subscription can download attorney fee data across different markets. The firm used its subscription to generate a Peer Monitor report for standard attorney billing rates for litigation services in 2019 and 2020 in the Austin, Texas legal community ("Peer Monitor Report"). The Peer Monitor Report is kept by the firm in the regular course of business, and it was the regular course of business of the firm to keep the Peer Monitor Report for competitive intelligence purposes. The Peer Monitor Report was made at or near the time the Peer Monitor data was downloaded and was made by the firm's competitive intelligence staff who generated the Peer Monitor Report in the regular course of business. A true and correct copy of the Peer Monitor Report is attached as **Exhibit B.7**.

16. I also base these statements on my review of Valeo Partners data for AmLaw 100 average hourly attorney billing rates for litigation services within Austin, Texas for the years 2019 through 2020, including the specific average hourly rates for DLA Piper, the firm currently

---

[2] *See* Thomson Reuters, *Peer Monitor*, https://legal.thomsonreuters.com/en/products/peer-monitor .

representing Defendants DeSimone and ICAR. The Valeo database is updated daily and details the hourly rates of attorneys at over 1,600 law firms worldwide and provides data that can be viewed by city.[3] Haynes and Boone subscribes to the Valeo database and through its subscription can download attorney fee data across different markets. The firm used its subscription to generate a Valeo report for actual firm rates in 2019 and 2020 for the Austin, Texas legal community and available DLA Piper actual firm rates for the Austin, Texas and Texas legal communities ("Valeo Report"). The Valeo Report is kept by the firm in the regular course of business, and it was the regular course of business of the firm to keep the Valeo Report for competitive intelligence purposes. The Valeo Report was made at or near the time the Valeo data was downloaded and was made by the firm's competitive intelligence staff who generated the Valeo Report in the regular course of business. A true and correct copy of the Valeo Report is attached as **Exhibit B.8**.

17. Haynes and Boone was an AmLaw 100 firm in 2019 and 2020.

18. A comparison between the hourly rates that Haynes and Boone charged BalanceCXI and the average hourly rates for litigation charged by other AmLaw 100 firms within Austin shows that Haynes and Boone rates are comparable to peer firm rates:

| Title | Haynes and Boone Charged Rates | Peer Monitor Litigation (Austin, TX) Mean Standard Rates | Valeo Partners Litigation (Austin, TX) Mean Actual Rates |
|---|---|---|---|
| Partner | $725 | REDACTED | |
| Counsel | $700 | | |
| Associate | $495 | | |

---

[3] *See* Valeo Partners, *Valeo Database*, https://www.valeopartners.com/legal/valeo-database .

19.     Based on my experience and review of market data, the hourly rates charged by Haynes and Boone were reasonable.

**D.     Reasonableness of Hours Expended.**

20.     The time entries contained in **Exhibit B.5** (the invoices) are true and contemporaneous time entries reflecting work performed by Haynes and Boone attorneys and staff and the hours expended were actually expended on the activities as stated in the time entries.

21.     I reviewed each of the time entries recorded by Haynes and Boone, including the time entries contained in **Exhibit B.5**, and I exercised billing judgment by reducing hours where appropriate, including where the recorded time was excessive, duplicative, or inadequately documented. Those reductions are shown by brackets or "No Charge" within the time entry, and the billed time already reflects the corresponding reduction.

22.     I also reviewed each of the time entries billed by R3 Digital Forensics, which are contained in **Exhibit B.6**, and determined that they accurately reflect the work that BalanceCXI requested that R3 Digital Forensics perform on its behalf related to this matter. Given the complexity and breadth of the forensic issues, in particular those created by Defendants' use of specialized software to delete data from multiple devices, R3 Digital Forensics was required to expend significant hours on this matter. Roy Rector, a forensic examiner with R3 Digital Forensics, testified at the Motion for Sanctions hearing, which required preparation time in addition to testimony time. The 74 hours billed by R3 Digital Forensics on this matter were reasonable.

23.     A summary of the hours billed by activity (found in **Exhibit A**) are as follows:

| Summary by Activity | | |
|---|---|---|
| **Motion to Compel** | **Hours Billed** | **Fees** |
| Conference Efforts in Preparation for Motion to Compel | 19 | $ 12,234.00 |
| Preparing Motion to Compel | 38.9 | $ 21,670.50 |
| Replying to Response to Motion to Compel | 23.9 | $ 13,854.50 |
| Replying to Amended Response to Motion to Compel | 48.3 | $ 28,186.50 |
| Responding to Motion for Leave to File Surreply | 12.7 | $ 7,206.50 |
| Additional Conference and Other Efforts Related to Motion to Compel | 19 | $ 12,418.00 |
| Preparing for and Attending Hearing on Motion to Compel | 17.8 | $ 10,260.00 |
| Responding to Emergency Motion to Amend Compel Order | 16.4 | $ 10,165.00 |
| Subtotal | 196 | $ 115,995.00 |
| | | |
| **Motion for Sanctions** | **Hours Billed** | **Fees** |
| Preparing Advisories and Related Conference Efforts | 65.4 | $ 39,283.50 |
| Preparing Motion for Sanctions | 45 | $ 26,650.00 |
| Conference and Other Efforts Related to Motion for Sanctions | 6.8 | $ 4,631.00 |
| Replying to Response to Motion for Sanctions | 36.7 | $ 22,030.50 |
| Preparing for and Attending Evidentiary Hearing on Motion for Sanctions | 169.5 | $ 97,823.00 |
| Subtotal | 323.4 | $ 190,418.00 |
| | | |
| **Forensic Work** | **Hours Billed** | **Fees** |
| Forensic Related Attorney Work | 11.6 | $ 7,789.00 |
| Subtotal | 11.6 | $ 7,789.00 |
| | | |
| Attorneys' Fees Total | 531 | $ 314,202.00 |
| | | |
| **Forensic Costs** | **Hours Billed** | **Fees** |
| R3 Digital Forensics Invoices | 74 | $ 23,810.00 |
| Forensic Costs Total | 74 | $ 23,810.00 |
| | | |
| Grand Total | 605 | $ 338,012.00 |

E.   *Johnson* **Factors.**

*Time and Labor Required*

24.   Haynes and Boone billed 19 hours (and wrote off 6 hours) on conference efforts to avoid the Motion to Compel. These efforts (which do not account for the months of Haynes and Boone's prior conference efforts to informally track and recover BalanceCXI's stolen data) primarily included preparing and sending detailed correspondence to Defendants' counsel regarding deficiencies with respect to Defendants' discovery responses. This correspondence, to which Defendants never responded prior to the Motion to Compel, provided a detailed and

specific path towards alleviation of the need for the Motion to Compel. BalanceCXI attempted in good faith negotiate a resolution to the discovery issues to no avail. The 19 hours billed for conference efforts preceding the Motion to Compel were reasonable.

25.   Haynes and Boone billed 38.9 hours (and wrote off 4.9 hours) for preparing the Motion to Compel. This was no ordinary motion to compel. In fact, it was closer in substance to a motion for preliminary injunction, as it contained a detailed factual record that included, among other things, forensic analysis and other evidence known to BalanceCXI at the time related to Defendants' deletion of data from BalanceCXI computers and initial evidence related to Defendants' cover-up of their misconduct. This evidence was marshalled as part of the Motion to Compel, in part, because Defendants were withholding discovery responses based on their theory that BalanceCXI must make an initial evidentiary showing prior to obtaining discovery, and Defendants' allegation that BalanceCXI had no evidence of misconduct by Defendants. Preparation of the Motion to Compel also included preparation of a detailed appendix which addressed the numerous objections (almost all of which were withdrawn or overruled) by Defendants to BalanceCXI's discovery. The 38.9 hours billed for preparing the Motion to Compel and corresponding evidentiary record were reasonable.

26.   Haynes and Boone billed 23.9 hours for replying to Defendants' response to the Motion to Compel. In their response, and in withholding production of documents, Defendants made the novel (yet ultimately rejected) argument that BalanceCXI had failed to properly serve Defendants. Replying to this argument required BalanceCXI to incur fees to review and analyze the response and the number of (inapt) cases cited within it. In addition to preparing the reply itself, BalanceCXI was also forced to prepare a sworn declaration that stated and attached evidence showing that BalanceCXI had indeed properly served Defendants. The 23.9 hours

billed for preparing BalanceCXI's reply to Defendants' response to the Motion to Compel were reasonable.

27.     Haynes and Boone billed 48.3 hours related to its reply to Defendants' amended response to the Motion to Compel. After BalanceCXI filed its reply to Defendants' original response to the Motion to Compel, Defendants moved for leave to amend their response (which had rested solely on an improper service argument) so that they could substantively respond to the Motion to Compel. This required BalanceCXI to incur fees reviewing and analyzing the motion for leave and corresponding exhibits, and then respond to the motion for leave. And then BalanceCXI had to incur fees reviewing, analyzing, and then preparing a reply to respond to Defendants' amended response to the Motion to Compel, which for the first time addressed the plethora of objections (besides improper service) that Defendants made to BalanceCXI's discovery requests. The 48.3 hours billed related to BalanceCXI's reply to Defendants' amended response to the Motion to Compel were reasonable.

28.     Haynes and Boone billed 12.7 hours related to responding to Defendants' motion for leave to file a surreply to BalanceCXI's reply to Defendants' amended response. After BalanceCXI filed its reply to Defendants' amended response addressing the substance of Defendants' objections, Defendants filed a motion for leave to file a surreply to it in order to reassert arguments related to Defendants' ultimately failed improper service objection. In order to cut off what was appearing to be a pattern of endless motions by Defendants related to responding to the Motion to Compel, BalanceCXI incurred fees preparing a response to Defendants' motion for leave that addressed *both* the procedural reasons why a surreply was not proper as well as responded to the substantive arguments made in the surreply attached to

Defendants' motion for leave. The 12.7 hours billed related to BalanceCXI responding to Defendants' motion for leave to file a surreply to the Motion to Compel were reasonable.

29.     Haynes and Boone billed 19 hours related to additional conference and other efforts after filing the Motion to Compel (and briefing that followed). After filing the Motion to Compel, BalanceCXI continued its efforts to track and recover its data from Defendants (and continued to be stonewalled regarding additional devices beyond the two tampered-with external hard drives produced by Defendants) and confer with Defendants to narrow the issues raised by its Motion to Compel. While BalanceCXI was successful in resolving some of the objections at issue in the Motion to Compel, many had to be ultimately overruled by the Court. And BalanceCXI would later learn through more discovery and forensic analysis that its efforts to wrangle information about its data through conference efforts with Defendants were not unnecessary because Defendants' cover-up was ongoing. The 19 hours billed related to additional conference and other efforts after filing the Motion to Compel were reasonable.

30.     Haynes and Boone billed 17.8 hours (and wrote off 7 hours) preparing for and attending the hearing before Judge Austin on the Motion to Compel. After the Court set the Motion to Compel for hearing, BalanceCXI incurred fees in preparing for and attending the hearing on the Motion to Compel. This included the preparation of argument, demonstratives, and a presentation that outlined the complicated factual record before the Court. And, given the complex nature of this unordinary Motion to Compel and underlying facts, it was reasonable for two Haynes and Boone attorneys to attend the hearing. The 17.8 hours billed for preparing and attending the hearing on the Motion to Compel were reasonable.

31.     Haynes and Boone billed 16.4 hours (and wrote off 2.5 hours) responding to Defendants' "emergency" motion to amend the Court's order on the Motion to Compel.

Defendants' motion misconstrued Judge Austin's ruling from the bench at the hearing on the Motion to Compel. This resulted in the Court entering a text order that modified the order on the Motion to Compel. Through additional rounds of briefing and BalanceCXI's motion to amend that text order, which included BalanceCXI ordering and reviewing the transcript for the hearing and attaching excerpts from it, the Court granted BalanceCXI's motion to amend the text order to reflect the Court's actual ruling at the hearing. The 16.4 hours billed related to responding to Defendants' emergency motion to amend the Court's order on the Motion to Compel were reasonable.

32.     Haynes and Boone billed 65.4 hours (and wrote off 10.7 hours) in reviewing and analyzing Defendants' productions pursuant to the Court's order on the Motion to Compel and then preparing the advisory report that the Court directed BalanceCXI to file after Defendants' supplemented their production pursuant to the Court's order on the Motion to Compel. This was a critical stage in BalanceCXI's efforts to track down its data and uncover the depth of Defendants' misconduct. This stage involved BalanceCXI having to review multiple sets of productions due to issues with the form of production and metadata. Ultimately, through the additional information that BalanceCXI received after the Court's order on the Motion to Compel and deeper forensic analysis, BalanceCXI incurred additional fees to marshal and analyze evidence of Defendants' spoliation and theft of its trade secrets, including its source code. This culminated in BalanceCXI filing a 16-page report with the Court that was accompanied by 18 exhibits, including the additional forensic analysis. The need for such a long and detailed report was amplified by Defendants' filing a preemptive advisory (without being asked to) that made misleading claims about Defendants' conduct in the discovery process. BalanceCXI was *both* replying to Defendants' preemptive filing and reporting the status of

discovery as ordered by the Court. The 65.4 hours billed related to reviewing and analyzing the produced discovery and making a report to the Court were reasonable.

33.     Haynes and Boone billed 45 hours (and wrote off 8.5 hours) in preparing the Motion for Sanctions. This time included initial research related to spoliation of evidence and failure to comply with a discovery order and remedies for BalanceCXI. Then, BalanceCXI incurred fees in preparing the rarest kind of motion for sanctions—a Motion for Sanctions which asked for a default judgment. Given the underlying facts and the relief sought, the Motion for Sanctions was complex and required extensive work in a short period by multiple attorneys to prepare and file it. The 45 hours billed for preparing the Motion for Sanctions were reasonable.

34.     Haynes and Boone billed 6.8 hours (and wrote off 1 hour) related to conference and other efforts after BalanceCXI filed its Motion for Sanctions. After filing its Motion for Sanctions, Defendants and BalanceCXI continued to confer related to the missing data and other discovery deficiencies that were central to the Motion for Sanctions. This also included time spent reviewing additional documents produced pursuant to the Court's order on the Motion to Compel after BalanceCXI filed its Motion for Sanctions. The 6.8 hours billed for conference and other efforts related to the Motion for Sanctions were reasonable.

35.     Haynes and Boone billed 36.7 hours (and wrote off 7.9 hours) for replying to Defendants' response to the Motion for Sanctions. The efforts in replying to Defendants' response to the Motion for Sanctions included reviewing and analyzing the response, cited case law, and the new evidence attached to the response, which included new testimony from Defendant Oldfield regarding one of the destroyed devices. BalanceCXI needed to analyze this new testimony against the existing evidence and forensic analysis, and then prepare a reply that further addressed Defendants' spoliation of evidence and cover-up and responding to

Defendants' argument that BalanceCXI had failed to confer with Defendants. The 36.7 hours billed for replying to Defendants' response to the Motion for Sanctions was reasonable.

36. Haynes and Boone billed 169.5 hours (and wrote off 44.9 hours) preparing for and attending the two-day evidentiary hearing before Judge Austin on the Motion for Sanctions. The hearing on the Motion for Sanctions was akin to the type of mini-trial that is put on for a motion for preliminary injunction. To prepare for the hearing, BalanceCXI incurred fees related to preparing a direct examination of a forensic expert witness, preparing the forensic expert witness for testimony, preparing cross examinations of Defendants, researching legal issues, preparing a detailed hearing presentation, and creating over 40 exhibits (some of which BalanceCXI used in depositions of Defendants set by BalanceCXI after the Court set the Motion for Sanctions for hearing). It was also reasonable for two BalanceCXI attorneys to attend the hearing, given the complex nature of the issues, the novelty (at the time) of a Zoom evidentiary hearing, and that both attorneys questioned witnesses. As reflected by the detailed Report and Recommendation (Dkt. 98), the evidentiary hearing involved extensive work related to a long and complicated record of discovery misconduct. Again, this Motion for Sanctions was far from ordinary. The 169.5 hours billed for preparing and attending the hearing on the Motion for Sanctions was reasonable.

37. Haynes and Boone billed 11.6 hours (and wrote off 3 hours) directly related to the forensic work that was necessary in this matter. That work involved working with R3 Digital Forensics and reviewing forensic analysis in the effort to track BalanceCXI's data. The 11.6 hours billed for forensic-related attorney work was reasonable.

38. All-in-all, the conduct by the Defendants underlying the Motion to Compel and Motion for Sanctions required BalanceCXI to incur significant fees. BalanceCXI's efforts were

all reactionary to Defendants' own conduct. BalanceCXI spent months even prior to filing a lawsuit to try to recover its data. And when those efforts failed, forcing BalanceCXI to file this lawsuit, BalanceCXI spent additional months trying to informally recover its data prior to serving formal discovery on Defendants. The hours and fees escalated as Defendants, rather than come forward with what they had done, continued to stonewall BalanceCXI and file motion after motion in response to the Motion to Compel, forcing BalanceCXI to respond to each filing. This continued through the Motion for Sanctions, with Defendants even waiting until their response to the Motion for Sanctions to admit that they connected and then destroyed yet another device to BalanceCXI's computers. Every step BalanceCXI has taken in this case related to the Motion to Compel and Motion for Sanctions has been in reaction to conduct by Defendants, starting with BalanceCXI's discovery of Defendants' use of specialized software to wipe data from BalanceCXI computers. Had Defendants simply turned over the BalanceCXI computers unaltered, these efforts would have been unnecessary. Therefore, given the circumstances, the 531 hours billed to BalanceCXI, which reflects reductions based on my exercise of billing judgment, was reasonable.

### *Novelty and Difficulty of the Legal Issues*

39.     The Motion to Compel and Motion for Sanctions involved difficult legal issues, particularly when considered against the complexity of the underlying facts. This matter involved theft of trade secrets, forensic analysis, and the rarest kind of sanctions related to discovery misconduct. Throughout the Motion to Compel and Motion for Sanctions process, BalanceCXI incurred fees to develop and address novel and difficult legal and factual issues.

*Preclusion of Other Employment*

40. The 531 hours of time expended by Haynes and Boone attorneys related to the Motion to Compel and Motion for Sanctions represents a portion of the total fees worked on this matter over the course of the past year and a half. This time represents a substantial amount of time expended by us on all legal matters during the relevant time period. I have, and Haynes and Boone has, a steady supply of clients on whose cases or matters these same attorneys could have worked if I or the firm had not chosen to render services to BalanceCXI.

*Skill Required to Perform the Legal Service Properly*

41. The area of trade secrets litigation is specialized and complex, particularly where it involves theft of source code and other electronically stored data. And this particular case has the added layer of complexity because of the issues related to intentional spoliation of evidence through specialized software and the deep forensic analysis involved. As a result, a high degree of skill and thoroughness was required to gather facts and address complex legal issues while prosecuting BalanceCXI's trade secrets and other claims.

*Customary Fee*

42. As I discuss above, the rates charged by Haynes and Boone in this case were customary and comparable (if not below) the rates charged by other AmLaw 100 firms within the Austin, Texas community for litigation work.

*Monetary Amount Involved and Results Obtained*

43. This case is critical to BalanceCXI. When two high-level executives left the company and then stole BalanceCXI's data, including source code, from company computers, this created an existential crisis for the company. Because BalanceCXI is a software business, it must ensure that its source code and other trade secrets remain secret. Further, the evidence of

Defendants contacting BalanceCXI customers to offer competing services after leaving BalanceCXI with BalanceCXI data was even more disruptive. Defendants' actions put BalanceCXI's entire business at risk.

44. The issues raised by the Motion to Compel and Motion for Sanctions were not collateral to this dispute. Instead, they went to the heart of the matter. Defendants' theft of trade secrets, including BalanceCXI's source code, was central to the case. The result obtained through the Motion to Compel was crucial because it allowed BalanceCXI to track its stolen data. And the result obtained by the Motion for Sanctions, a default judgment on liability, was the best result that BalanceCXI could have obtained through its Motion for Sanctions with respect to its trade secrets claims.

### *Experience, Reputation, and Ability of the Attorneys*

45. The experience, reputations, and abilities of the lawyers performing the services are addressed above and in **Exhibits B.1-B.4**.

### *Nature and Duration of the Professional Relationship*

46. The relationship between Haynes and Boone and BalanceCXI involves an arms-length transaction, with no attendant considerations that might call into question the reasonableness of the hourly rates I charged or the number of hours I expended. This matter, and issues related to it, is BalanceCXI's only retention of Haynes and Boone.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 17, 2021.

_____
Adam Sencenbaugh

4846-5046-1660