**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **BALANCECXI, INC. D/B/A ZACOUSTIC,** § § § | |
| **Plaintiff** § § | **Civil Action No. 1:19-CV-767** |
| v. § § | |
| **INTERNATIONAL CONSULTING & RESEARCH GROUP, LLC, CHRISTOPHER DESIMONE, AND ADAM OLDFIELD,** § § § § § § | |
| **Defendants.** § | |

**DEFENDANT CHRISTOPHER DESIMONE'S MOTION FOR RECONSIDERATION OF ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

## I.  INTRODUCTION

Defendant Christopher DeSimone respectfully asks the Court to reconsider its Order adopting in full the Report and Recommendation of the United States Magistrate Judge (the "Report") issuing case terminating and monetary sanctions against Mr. DeSimone. Reconsideration is appropriate for two narrow reasons. First, the Magistrate Judge's Report contains several findings of fact that are manifestly wrong and which should be corrected. Second, the Report fails to assign any liability to Mr. DeSimone's prior lawyer, despite recognizing that Mr. DeSimone followed counsel's advice in deleting personal files from his computer and despite his counsel's own acknowledgement of fault. The result is that Mr. DeSimone—an individual who had no familiarity with discovery obligations in litigation and who attempted to follow the advice of counsel—is now subject to death penalty and steep monetary sanctions and must litigate

1

based on a fact record that is wrong. The Court should correct the errors in the record and assign some or all of Mr. DeSimone's joint and several liability to to his prior counsel for the spoliation that occurred.

## II.     **RECONSIDERATION IS APPROPRIATE IN THIS CASE**

The courts analyze motions for reconsideration under the standards set forth in Federal Rules of Civil Procedure 59(e) and 60(b). *Rogers v. KBR Technical Services Inc.*, 2008 WL 2337184, at *5 (5th Cir. June 9, 2008). Where, as here, the motion is filed more than ten days after the order was entered, the Court should apply the analysis set forth in Rule 60(b). *Id.* That Rule states: "On motion and upon just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for ... any [ ] reason that justifies relief." Fed. R. Civ. P 60(b)(6). "The purpose of Rule 60(b) is to balance the inclination to uphold the finality of a judgment with the 'command of the court's conscience that justice be done in light of all the facts.'" *Watson v. Flores*, 2015 WL 1509512, at *2 (W.D. Tex. Apr. 1, 2015) (quoting *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981)). "To ensure that the balance is maintained between preserving the finality of a judgment with the interest in ensuring that justice be done, a ruling on a Rule 60(b) motion should show that the full merits of the underlying cause had been fully examined." *Watson*, 2015 WL 1509512, at *2; *Seven Elves*, 635 F.2d at 403.

Reconsideration is appropriate in this case for two reasons. First, the Court should address Defendant DeSimone's specific objections to erroneous findings of fact contained in the Magistrate Judge's Report that fundamentally prejudiced Mr. DeSimone. Second, the Court should reconsider whether the Mr. DeSimone's prior counsel should bear some or all of Mr. DeSimone's financial responsibility for the discovery problems that resulted from counsel's advice and representation.

**A.      The Court Should Correct Errors In The Magistrate Judge's Findings of Fact**

The law requires the Court to "conduct a de novo review of any Magistrate Judge's conclusions to which a party has specifically objected." *Hernandez v. Frazier*, 2013 WL 12142355, at *5 (W.D. Tex. Mar. 25, 2013); 28 U.S.C. § 636(b)(1)(C). In conducting this review, the Court can and should correct errors in findings of fact. *See U.S. v. Wilson*, 864 F.2d 1219, 1222 (5th Cir. 1989) (the reviewing court should make "[its] own determination based upon the record and unrestrained by the findings and conclusions of the magistrate.").

In his Objection to the Magistrate Judge's Report, Defendant DeSimone made several specific objections to the Magistrate Judge's findings of fact. In particular, on page 10 of his Objection, Mr. DeSimone pointed to the following errors:

| Erroneous Finding of Fact | Correction |
|---|---|
| DeSimone first worked with Zacoustic (indirectly) in 2016. This occurred while he was employed by ICAR, which had been hired to manage a beta test of Zacoustic software for an ICAR client that was also a Zacoustic customer. Report at 5 (citing Declaration of Tim Lavin, Dkt. 12-2, ¶ 5). | Mr. Lavin does not testify that Zacoustic hired ICAR to manage a beta test of Zacoustic software in 2016. Nor is that true. Instead, Zacoustic hired a company called DayBlink Consulting for this purpose. At the time, Mr. DeSimone was employed by DayBlink. The beta testing was performed for a DayBlink customer, not an ICAR customer. DeSimone Decl., ¶ 2. |
| After leaving Zacoustic, DeSimone eventually resumed working through ICAR, and Oldfield joined him there. DeSimone is ICAR's sole managing member and Oldfield is an employee. Report at 6 (citing Dkt. 30-2 at 1). | Mr. Oldfield has never been an ICAR employee. Instead, as Mr. DeSimone has testified, Mr. Oldfield was a 1099 independent consultant who performed work for ICAR in that capacity. *See* Hr'g Tr. Vol. 2 at 31:5-7. |
| On April 5, 2019, BalanceCXI, through counsel (David Whittlesey of Shearman and Sterling LLP) sent a letter to DeSimone and Oldfield, requesting the return of the company computers. Report at 6 (citing Letter from Shearman & Sterling, Dkt. 83-13). | This is wrong. As the letter itself demonstrates, Shearman & Sterling addressed the letter and the request solely to Mr. Oldfield. Shearman & Sterling did not copy Mr. DeSimone on the letter, and there is no evidence in the record that Shearman & |

3

|  |  |
|---|---|
|  | Sterling ever communicated a similar request to Mr. DeSimone. |
| The [Shearman & Sterling] letter instructed DeSimone and Oldfield not to make any changes to the computers before returning them. Report at 7 (citing Letter from Shearman & Sterling, Dkt. 83-13). | Again, this is wrong. The letter was not directed to Mr. DeSimone at all, and there is no evidence that Shearman & Sterling ever communicated a similar direction to Mr. DeSimone. |
| DeSimone only produced one [of the requested external storage devices] for examination—the Lexar thumb drive. The examination of the thumb drive showed that on "December 6, 2019, CCleaner was used to wipe the device." Report at 12 (quoting Forensic Report, Dkt. 83-1 at 2). | Although this entire bullet point is devoted to actions undertaken by Mr. DeSimone, Mr. DeSimone did not use CCleaner to "wipe the device" that was produced to Plaintiff. As Mr. DeSimone testified and Mr. Oldfield admitted, it was Mr. Oldfield who ran CCleaner on Mr. DeSimone's Lexar thumb drive, without Mr. DeSimone's knowledge or permission. Dkt. 83-36 at 186-187; Hr'g Tr. Vol. 2 at 27:4-7. |
| The last computer identified by the examiner is Oldfield's current laptop, which DeSimone purchased for him after Oldfield returned his previous laptop to BalanceCXI in April 2019. Report at 13 (citing Dkt. 83-36 at 181). | Contrary to this finding of fact, neither Mr. DeSimone nor ICAR purchased any laptop for Mr. Oldfield. Instead, Mr. DeSimone supplied Mr. Oldfield with a laptop Mr. DeSimone was given as compensation by a third party. DeSimone Decl., ¶ 23. |
| Thus, despite being told from the outset that they were to return their computers "as is" and with no alterations, DeSimone and Oldfield immediately disregarded that instruction, and at every turn they have taken affirmative steps to destroy, delete and wipe data, first from their laptops, and then from the many devices they transferred data to from those laptops. Twice, on the eve of turning devices over to BalanceCXI, they used software to permanently wipe data from the devices. | There are many things wrong with this finding, as discussed in greater detail below. First, as mentioned previously, Mr. DeSimone was not expressly instructed that he should return his computer "as is" prior to copying and deleting personal files from that computer. *See* DeSimone Decl., ¶ 9. To the contrary, Mr. DeSimone was advised by counsel on two occasions that he should delete personal files from his company laptop prior to returning it to the company. Hr'g Tr. Vol. 2 at 21:21-23; DeSimone Decl., ¶¶ 11, 15. Nor did Mr. DeSimone ever wipe data from any device to which he transferred personal files. Hr'g Tr. Vol. 2 at 27:4-7; DeSimone Decl., ¶¶ 11, 15. Instead, Mr. Oldfield ran CCleaner on Mr. DeSimone's Lexar Device without Mr. DeSimone's knowledge or permission. Dkt. 83-36 at 186-187. The other devices that Mr. |

4

| | |
|---|---|
| | DeSimone connected to his company laptop were discarded or lost before any lawsuit was filed by BalanceCXI, long before he was on notice that those devices might become relevant in some undisclosed lawsuit, and well before BalanceCXI formally demanded production of those devices from Mr. DeSimone.  *See* Objection, Section II.C, pp. 5-7; *id.* Section II.D, p. 6. |

In addition to pointing out these errors, Mr. DeSimone specifically objected to the way in which the Magistrate Judge's Report lumped both individual Defendants together and treated the actions of one as attributable to the other.  *See* Objection at 12-14.  The most egregious example of this is the Magistrate Judge's conclusion that Mr. Oldfield and Mr. DeSimone took "very similar" actions with respect to company information housed on their laptops.  *See* Report at 9.  In his Objection, Mr. DeSimone detailed the ways in which his actions were distinct from that of Mr. Oldfield's, making the Magistrate Judge's conclusion in this regard erroneous:

- Prior to beginning the process of copying personal files to the Lexar Device and deleting those files from his computer, Mr. DeSimone was not instructed by BalanceCXI or its counsel that he should return his laptop or refrain from making any alterations to his laptop.  *See* Objection, Section II.C., pp. 5-7.

- Mr. DeSimone never had any of BalanceCXI's source code on his computer. DeSimone Decl., ¶ 24; *compare* Report at 8-9 (describing Mr. Oldfield's access to source code).

- There is no evidence that Mr. DeSimone copied any of BalanceCXI's source code. *Compare* Report at 8 (discussing evidence that Mr. Oldfield copied source code).

- Mr. DeSimone did not download a copy of his entire company email file from his personal computer to an external device.  *Compare* Report at 8 (discussing evidence that Mr. Oldfield did so).

- Mr. DeSimone copied and deleted approximately 5% of the volume of materials copied and deleted by Mr. Oldfield from his company laptop.  *Compare* DeSimone Forensic Notes, Dkt. 83-3 at 3-4, *with* Oldfield Forensic Notes, Dkt. 83-2 at 2.

5

- Mr. DeSimone had no previous experience with CCleaner or the implications of its use to delete files. *See* Objection, Section II.C., p. 6.

- Mr. DeSimone did not destroy or delete any information from any external drive onto which he copied files from his company computer. *See* Objection, Section III.A.1, pp. 13-14.

- Mr. DeSimone did not discard any external device after he was on notice that the device may be relevant and should be produced. *See* Objection, Section II.C, pp. 5-6; *id.*, Section II.D, pp. 7-8; *id.*, Section II.E, pp. 8-9.

- Contrary to the Magistrate's conclusion, Mr. DeSimone did not ignore his counsel's instruction to segregate and preserve anything he removed from his company laptop. *See* Report at 22 n.10. Nor did he "admit" that he "used 'wiping' software to *destroy* that evidence." *Id.*; *compare* Report at 11-12 (discussing evidence that Mr. Oldfield used wiping software on various devices). To the contrary, Mr. DeSimone did not access the Lexar Device after he copied his personal files to it, did not wipe that device or instruct anyone to do so, and had no idea that Mr. Oldfield would wipe that device with CCleaner when he gave it to Mr. Oldfield to turn over to counsel. *See* Objection, Section II.F, pp. 9-10. In other words, the "[m]ost troubling" evidence, in the words of the Magistrate, does not apply to Mr. DeSimone. *See* Report at 23.

- There are no ShellBags associated with either the FIT Device or Generic USB Device, suggesting that no files were copied to those devices from Mr. DeSimone's company laptop. *See* Hr'g Tr. Vol. 2 at 24:12-25:6; 25:18-26:11.

- Mr. DeSimone did not reformat any device attached to a company computer or otherwise access any company computer or device after April 9, 2019. *Compare* Report at 13 (describing Mr. Oldfield's reformatting of a computer).

- Mr. DeSimone did not conceal the existence of any external devices in his discovery responses. *Compare* Report at 12 (describing the nondisclosure of an additional device that was connected to Mr. Oldfield's company laptop).

Finally, the "most troubling" evidence of intent, from the Magistrate's perspective, does not apply at all to Mr. DeSimone. In the lynchpin paragraph relating to Defendants' bad intent, the Magistrate's Report says that both Defendants "doubled down on their actions," by "tamper[ing] with drives before surrendering them over for examination, and us[ing] data wiping software once again, permanently deleting hundreds of files from the drives." Report at 23. With respect to Mr. DeSimone, this conclusion is entirely incorrect. As noted, Mr. DeSimone did not

6

access *any* of the four devices that were supposedly connected to his company laptop after April 9, 2019. *See* Objection at 18; DeSimone Dec., ¶¶ 16, 21, 22. Nor did he use any data wiping software on any external device at any point in time. Objection at 18; DeSimone Dec., ¶¶ 18, 21, 22. To the contrary, Mr. DeSimone did exactly as he was instructed by his attorney: he removed personal files from his company laptop and preserved those files on a Lexar Device. *See* Objection at 5-7. The Magistrate's findings and conclusions to the contrary are wrong.

To the extent the Magistrate Judge's Report conflates the actions of the two individual Defendants or flatly miscites the evidentiary record, those errors are significant and should be corrected. Although the Court's Order states that the Court reviewed Mr. DeSimone's objections *de novo*, the Court there are numerous problems with the findings of fact adopted by the Court. Mr. DeSimone should not be forced to defend himself based on a factual record that is wrong. Respectfully, Mr. DeSimone requests that the Court vacate those findings of fact regarding Mr. DeSimone that are erroneous and correct the record so that "justice [may] be done in light of all the facts." *Watson v. Flores*, 2015 WL 1509512, at *2; *U.S. v. Wilson*, 864 F.2d at 1222.

### B. The Court Should Reconsider Whether The Individual Defendants' Attorney Should Pay Some Or All Of The Applicable Monetary Sanction

As Mr. DeSimone pointed out in his Objection to the Magistrate Judge's Report, there is ample evidence of record that the discovery problems and delays attributed to Mr. DeSimone in this case were the result of advice given and actions taken by his prior counsel, Kerry O'Brien of the O'Brien Law Firm. *See, e.g.*, Objection at 19-20. Pursuant to Federal Rule of Civil Procedure Rule 37, upon granting a motion for discovery sanctions, a court may "require the party . . . whose conduct necessitated the motion, the party *or attorney advising that conduct, or both* to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. Rule 37(a)(5)(A) (emphasis added); *see also Orchestrate HR, Inc. v. Trombetta*, 178 F.

7

Supp. 3d 476, 487-88 (N.D. Tex. 2016) (ordering party's attorney to pay opposing party's attorneys' fees and costs in connection with sanctions for bad faith discovery practices). In this case, the record supports requiring Defendants' counsel to pay some or all of the liability imposed jointly and severally on Mr. DeSimone.

First, it bears emphasizing that Mr. DeSimone is an individual who has never been involved in litigation before now. *See* Objection at 15; DeSimone Decl., ¶ 15. And Mr. DeSimone's major transgression—deleting personal files from his company laptop and copying files to the Lexar Drive on April 9, 2019—was undertaken on the advice of counsel. Objection at 5-7, 18. As set forth in Mr. DeSimone's Objection, prior to initiating the deletion process and prior to running CCleaner for the first time on his laptop, he was advised multiple times by Mr. O'Brien that he could delete personal files from his company computer. *Id.* at 8. At the time, Mr. O'Brien did not even advise Mr. DeSimone that he should segregate those files for later inspection. *Id.* Nor did Mr. O'Brien advise Mr. DeSimone that he should preserve ESI that could become relevant to a later lawsuit between Mr. DeSimone and Plaintiff. *Id.* Only later did Mr. O'Brien advise Mr. DeSimone to segregate and store the deleted files on a separate device—advice Mr. DeSimone followed. *Id.* Even the Magistrate Judge acknowledged that Mr. O'Brien gave Defendants "the questionable instruction to violate their employee policy and remove 'purely personal' material from their laptops." *See* Report at 22 n.10. Further, up through the last moment that Mr. DeSimone accessed his company laptop on April 9, 2019, his counsel never advised him to implement a "litigation hold," never explained the concept of spoliation, and never advised him that he had a duty to preserve any potentially relevant ESI in his possession, custody, or control. Objection at 4, 8; DeSimone Decl., ¶ 15.

The record also supports a finding that any discovery delays—necessitating meet and confers and the motion to compel for which Plaintiffs now seek their attorneys' fees—were the fault of Mr. DeSimone's prior counsel.  As Mr. DeSimone has testified, each time his counsel asked him to provide ESI or other materials for production in this lawsuit, Mr. DeSimone complied with the request almost immediately.  *See* Hr'g Tr. Vol. 2 at 29:10-19; DeSimone Decl., ¶¶ 17-18.  Upon hiring Mr. O'Brien and before he was given any instruction with respect to his laptop, Mr. DeSimone told Mr. O'Brien that he had three devices that needed to be returned to BalanceCXI.  *See* DeSimone Decl., ¶ 10.  Five days after hiring Mr. O'Brien and before any lawsuit was ever filed, Mr. DeSimone voluntarily surrendered his company laptop and two other computers for return to the company.  *Id.*, ¶ 17.  On the same day Mr. DeSimone was first told by his counsel that he would need to produce the Lexar Device, Mr. DeSimone handed it off to Mr. Oldfield for return.  *Id.*, ¶ 18.[1]  Each time Mr. O'Brien sought additional documents from Mr. DeSimone, he promptly complied.  As Mr. O'Brien himself represented in discussing the possibility of potential sanctions with Magistrate Judge Austin during the initial hearing on Plaintiff's motion to compel, "the Court may order [sanctions] against the clients or against my firm, I don't care.  I'm going to be paying it."  Ex. E, Excerpt from Transcript of Motion Hearing Before the Honorable Andrew W. Austin at 62:4-23.  Mr. O'Brien later provided sworn testimony that "Adam and Chris were timely in getting me the required materials and did whatever I asked them to do in order to comply with the Order [compelling production]."  Dkt. 68-4, ¶ 5.  Mr. O'Brien also has taken responsibility for failures with respect to the preservation of metadata and errors with respect to Mr. DeSimone's interrogatory responses.  *See id.*, ¶¶ 6, 13.

---

[1] As Mr. DeSimone testified, the reason he handed the device to Mr. Oldfield is because both individuals were in Dallas on business at the time their counsel asked Mr. DeSimone to turn over the Lexar device, and Mr. DeSimone believed he could get the device to counsel more quickly by giving it to Mr. Oldfield—who was headed home to Austin and who could deliver the device to Mr. O'Brien in person.  Objection at 8.

9

In short, Mr. DeSimone's counsel played a major role in the spoliation and discovery delays occasioned in this lawsuit. With respect to Mr. DeSimone, unlike Mr. Oldfield, every act of purported spoliation occurred only on the advice of counsel. Notwithstanding counsel's advice and actions, Mr. DeSimone now faces joint and several liability for hundreds of thousands of dollars in fees and costs. Mr. O'Brien should bear some or all of that cost. The Court should reconsider its Order assigning 100% of that liability jointly and severally to Mr. DeSimone.

### III.   CONCLUSION

For all the foregoing reasons, Defendant DeSimone respectfully requests that the Court reconsider its Order adopting the Magistrate Judge's Report and Recommendations in full so that it can (1) correct errors in the Magistrate Judge's findings of fact, and (2) assign some or all of Mr. DeSimone's joint and several liability for fees to his prior counsel, Kerry O'Brien.

Dated: March 3, 2021

Respectfully submitted,

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)
Texas Bar No. 24043561
Amy.Ruhland@us.dlapiper.com
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

**ATTORNEY FOR DEFENDANT CHRISTOPHER DESIMONE**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March, 2021, I certify that I served the foregoing document on all counsel of record via the Court's CM/ECF filing system.

*/s/ Amy L. Ruhland*
Amy L. Ruhland (Rudd)