UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BALANCECXI, INC. D/B/A ZACOUSTIC, § § *Plaintiff* § V. § § INTERNATIONAL CONSULTING & § RESEARCH GROUP, LLC, § CHRISTOPHER DESIMONE, AND § ADAM OLDFIELD § § *Defendants* | Civil Action No. 1:19-cv-767-RP |

### PLAINTIFF BALANCECXI, INC. D/B/A ZACOUSTIC'S REPLY BRIEF IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Defendants DeSimone and Oldfield (collectively, "*Defendants*") offer the Court no basis to discount the fees and expenses Plaintiff BalanceCXI, Inc. d/b/a Zacoustic ("*BalanceCXI*") was forced to incur to discover and remedy Defendants' misconduct. Defendants point to a single out-of-date bar survey to contest billing rates but ignore the real-time market data and declaration establishing the charged rates are reasonable. Defendants' attack on the number of hours incurred is equally unavailing, and their examples of claimed overbilling only highlight that the work was necessary precisely because of Defendants' own stonewalling. Defendants' "serial" and "pernicious pattern of evidence destruction," combined with their excessive filings, made this discovery dispute significantly more expensive that it otherwise would have been. The Court should not reward Defendants' intransigence by forcing BalanceCXI to bear the fees and expenses for Defendants' conduct that the Court sanctioned.

## ARGUMENT & AUTHORITIES

**A. The time spent by counsel for BalanceCXI was reasonable.**

Defendants first argue that the number of hours expended by BalanceCXI's counsel is unreasonably excessive because it was incurred "in connection with only two motions."[1] While it is true that all of the work stemmed from the two underlying motions for which the Court awarded sanctions, that fact obscures the number of filings that was necessary to adjudicate them.[2] Judge Austin's Report and Recommendation lays out the "long and complicated"[3] history of this discovery dispute, after which he concluded that "[n]one, or very little, of this work would have been necessary had Defendants turned over their computers unaltered, and a good deal of it would have been unnecessary if Defendants had not stalled in producing the storage devices, and handed them over unaltered."[4]

Defendants also claim four instances of alleged overbilling to justify a further discount. But, instead of examining the actual work performed (as set out in the Sencenbaugh Declaration and contemporaneous time entries), Defendants focus only on the general categories at issue. The full story behind each example illustrates why the work performed was reasonable:

---

[1] DeSimone Objection (Dkt. 115), at p. 2; *see also* Oldfield Objection (Dkt. 114), at p.2.

[2] For example, on just the Motion to Compel, Defendants filed an Original Response (Dkt. 14), a Motion for Leave to file an Amended Response (Dkt. 26-1), an Amended Response (Dkt. 30), a Motion for Leave to file Surreply (Dkt. 39), a Surreply (Dkt. 39-1), a Reply in Support of Motion for Leave to File Surreply (Dkt. 42), and a Motion to Alter or Amend Order on Motion to Compel (Dkt. 51). While a Motion to Compel ordinarily triggers a single responsive filing from the opposing party, Defendants filed ***seven separate motions and responsive filings***, significantly increasing the costs on both sides.

[3] Report and Recommendation (Dkt. 98), at p. 2. Indeed, in his response to the Report and Recommendation, Defendant DeSimone even uses the phrase "myriad facts and data" to describe this case. DeSimone's Objection to Report and Recommendation (Dkt. 108), at p. 1.

[4] Report and Recommendation (Dkt. 98), at p. 28.

- Conference Efforts and Advisories: Defendants claim that BalanceCXI spent too much time on conference efforts and on discovery advisories. But BalanceCXI's conference efforts were directed at *narrowing* the discovery dispute to *avoid* court filings. As to advisories, Judge Austin ordered BalanceCXI to file an advisory following the hearing on the Motion to Compel. But the final advisory was significantly more complex than initially anticipated because Defendants filed a misleading preemptive advisory to which BalanceCXI was required to respond. In addition, subsequent forensic work on the drives produced by Defendants after the Motion to Compel revealed the existence of even more devices connected to their BalanceCXI computers that had never been disclosed. Uncovering Defendants' misconduct took considerable work by counsel for BalanceCXI, culminating in a 16-page and 18-exhibit Advisory (Dkt. 62). Defendants should not reap a benefit because their misrepresentations made each of these tasks harder.

- Deficiency Letter: Defendants next claim that BalanceCXI spent too much time on a discovery deficiency letter. But by early December 2019, counsel for BalanceCXI had already spent months working informally to seek the return of BalanceCXI's data (and believing that Defendants would make good on their counsel's promise to return the relevant drives). After Defendants wholly ignored their discovery obligations and failed to timely produce *any* documents, BalanceCXI drafted a 15-page, single-spaced letter to put Defendants on notice of all of the legal and factual shortcomings of their discovery position.[5] BalanceCXI invested the time in this correspondence to provide a complete road map to guide a productive conference between counsel and to *avoid* the need to file a more-costly Motion to Compel. But Defendants ignored this letter, making the Motion to Compel necessary. Defendants' assertion that BalanceCXI "spent nearly 20 hours on drafting a single deficiency letter" is also misleading. An examination of those time entries organized in Exhibit A to the Application (Dkt. 112-1, at pp. 3-4) reveals that the time included client communications, legal research, and analysis of discovery issues in addition to drafting the 15-page deficiency letter, all of which was applicable to the ensuing Motion to Compel.

- Reply to Motion to Compel: Defendants further complain that the time spent replying to their Amended Response to the Motion to Compel was more than double the time it took responding to their Original Response. But these were completely different filings raising discrete issues. Defendants' Original Response was focused on a single (novel) argument that Defendants need not answer *any* discovery because it was served electronically. After BalanceCXI filed its Reply responding to that argument, Defendants sought leave to file (and then filed) a substantive response to all of the underlying issues raised in the Motion to Compel, styling this document an "Amended Response." Because it covered many more new issues, BalanceCXI's counsel required more time in responding. Defendants then filed a Motion for Leave to file a Surreply on the same issues raised in their Original Response, forcing BalanceCXI to respond.

- Motion for Sanctions: Defendants finally argue that the time spent preparing for and participating in the hearing on the Motion for Sanctions was too great compared to that

---

[5] BalanceCXI attached that letter to its Motion to Compel for the Court's review. *See* Dkt. 12-15.

spent preparing for and participating in the hearing on the Motion to Compel. While the initial hearing on the Motion to Compel was significant, it was a morning hearing featuring just argument of counsel. In contrast, the hearing on the Motion for Sanctions was a two-day evidentiary hearing, which included opening statements, presentation of fact and expert witnesses, and closing arguments. As one of the first complex evidentiary hearings over Zoom in federal court at the start of the pandemic, BalanceCXI consequently invested additional time in preparation. But more importantly, the issues at stake in the Motion for Sanctions, which resulted in death penalty sanctions against Defendants, were significantly more important to the case, justifying the larger time investment from counsel. When BalanceCXI filed its Motion to Compel it was unaware of the bulk of discovery misconduct by Defendants, which only came to light after that filing. Presenting the Motion for Sanctions required BalanceCXI to marshal all of the evidence in its possession relevant to Defendants' discovery misconduct. Thus, simply comparing the time spent on the two tasks does not illustrate that either was unreasonable.

Defendants do not state what amount of time they believe would have been reasonable for any particular task or pleading, nor do they testify to the number of hours that any of Defendants' counsel spent on the corresponding tasks.[6] And while Defendants now complain about reasonableness through their Objections filed with the Court, Defendants did not raise any objections to the reasonableness of the fees prior to their filings. As described in the certificate of conference to the Application, BalanceCXI's efforts to confer with Defendants regarding fees were ignored, despite the requirements of Local Rule CV-7(j)(1). Defendants neglected their duty to confer over the Application and now fail to articulate precisely why the Court should find the hours expended unreasonable. Defendants' vague and unsupported objections should be overruled.

**B. The rates charged by BalanceCXI's counsel in this matter are reasonable.**

Defendants point to a 2015 Texas State Bar Hourly Rate Fact Sheet ("*2015 Bar Survey*") to claim that the rates charged by BalanceCXI's counsel are unreasonable. But the 2015 Bar Survey

---

[6] Defendants complain that that the fees should be reduced based on alleged block billing. Defendants and the Court may look to the time entries and Exhibit A of the Application for a detailed delineation of type of activity and whether it relates to the Motion to Compel or Motion for Sanctions. Given this precision and delineation, the Court should not reduce any part of the award based on any entries that are "block billed," even if that was the case.

is out of date, and although some courts have relied upon it in the absence of more reliable data, this Court has up-to-date market data in the record that reflects the actual rates charged in Austin in 2019 and 2020.

In addition to the declaration of counsel, BalanceCXI presented two current market surveys for the Austin legal community: (1) Thomson Reuter's Peer Monitor, and (2) Valeo Partners. These surveys indicate that the rates charged by BalanceCXI's counsel in this matter are significantly *below* the average rates for similarly-sized firms in the Austin community. And the rate reflected is for commercial litigation services, not a particular sub-specialty that might command an even higher rate. Defendants do not dispute this market data or its reliability, nor offer contra market data from 2019 or 2020 or a corresponding declaration. The Court should use the most current data that reflects comparable firms within the Austin legal community.

It is telling that none of the three law firms used by Defendants—a solo practitioner, a medium-sized Texas firm, and an AmLaw Top 5 firm—have testified that the rates they charged Defendants in this matter are equal to those reflected in the 2015 Bar Survey. In fact, the up-to-date survey data indicate that ICAR and DeSimone's current counsel's rates significantly *exceed* the rates charged by BalanceCXI's counsel.[7] Indeed, federal courts have looked to the rates charged by the opposing party's counsel to determine the reasonableness of rates. *See, e.g.*, *Regeneron Pharm., Inc. v. Merus N.V.*, No. 14-cv-1650 (KBF), 2018 U.S. Dist. LEXIS 115661, at *11-12 (S.D.N.Y. June 25, 2018); *Slipchenko v. Brunel Energy, Inc.*, CIV.A. H-11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015).

---

[7] *See* Valeo Report, Dkt. 113-3.

### C. Defendants wholly ignore the *Johnson* factors.

Defendants appear to concede that no downward adjustment of the lodestar is necessary because they do not address, much less contest, the *Johnson* factors in their objections. The Court should find the lodestar amount reasonable, and it also should not adjust it downward based on the uncontested *Johnson* factors.

### CONCLUSION AND PRAYER

For the reasons set forth herein and in its Application, BalanceCXI requests that the Court award BalanceCXI with $314,202.00 of attorneys' fees and expenses, $23,810.00 in forensic costs, and any other relief to which it is entitled.

Dated: March 8, 2021.

        Respectfully submitted,

        */s/ Adam H. Sencenbaugh*
        Adam H. Sencenbaugh
        adam.sencenbaugh@haynesboone.com
        State Bar No. 24060584
        J. Iris Gibson
        iris.gibson@haynesboone.com
        State Bar No. 24037571
        Henson Adams
        State Bar No. 24101418
        henson.adams@haynesboone.com
        HAYNES AND BOONE, L.L.P.
        600 Congress Avenue, Suite 1300
        Austin, Texas 78701
        Telephone: 512-867-8400
        Facsimile: 512-867-8470

        **ATTORNEYS FOR BALANCECXI, INC. D/B/A ZACOUSTIC**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 8, 2021, a copy of the foregoing instrument was served on counsel of record in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules.

                                        */s/ Henson Adams*
                                        Henson Adams

4850-5384-0863