UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BALANCECXI, INC. D/B/A ZACOUSTIC, | § | |
| | § | |
| *Plaintiff* | § | |
| V. | § | Civil Action No. 1:19-cv-767-RP |
| | § | |
| INTERNATIONAL CONSULTING & | § | |
| RESEARCH GROUP, LLC, | § | |
| CHRISTOPHER DESIMONE, AND | § | |
| ADAM OLDFIELD | § | |
| | § | |
| *Defendants* | | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT CHRISTOPHER DESIMONE'S
MOTION FOR RECONSIDERATION OF ORDER ADOPTING THE REPORT AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

---

Defendant DeSimone engaged in a "serial" and "pernicious pattern of evidence destruction," after being put on notice to preserve evidence by both BalanceCXI and his own lawyer.[1] The Magistrate Judge described these actions as "some of the most extreme examples of spoliation of evidence the undersigned has witnessed in his 21 years on the bench."[2]

DeSimone now moves for relief from the Court's Amended Order (Dkt. 111) under Federal Rule of Civil Procedure 60(b)(6). But he demonstrates no "exceptional circumstances" to merit such extraordinary relief, nor can he prove the order was "manifestly unjust." To the contrary, there was more than sufficient evidence to support the Magistrate Judge's finding that DeSimone permanently destroyed electronically stored information that he was obligated to preserve, and he did so with the intent to deprive BalanceCXI of that information. His motion should be denied.

---

[1] Report and Recommendation (Dkt. No. 98), at pp. 22 and 25.

[2] Report and Recommendation (Dkt. 98), at p. 28.

## RULE 60(B) STANDARD

DeSimone has moved for reconsideration only under Rule 60(b)(6), which provides for "any other reason that justifies relief" as a basis for relief from a judgment or order.[3] FED. R. CIV. P. 60(b)(6).[4] To prevail under Rule 60(b)(6), the movant must show "extraordinary circumstances" that justify the relief from the judgment or order. *Id.* at *3. The judgment or order at issue must be "manifestly unjust." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 357 (5th Cir. 1993). Although DeSimone calls into question whether "the full merits of the underlying cause has been fully examined," *see* Motion (Dkt. 116 at p. 2), DeSimone provides no discussion regarding what extraordinary circumstances exist or the manifest injustice the Court purportedly committed. As discussed herein, the underlying evidence supports the Court's Amended Order.

## ARGUMENT & AUTHORITIES

**I.  The Court should disregard DeSimone's January 12, 2021 declaration.**

**A.  DeSimone's January 12, 2021 declaration was untimely.**

As a threshold matter, in considering the motion to reconsider, the Court should not give any weight to the January 12, 2021 declaration that DeSimone attached to his original objection. Without offering any reason for why the Court should consider additional evidence after the

---

[3] Rule 60(b) sets forth six categories for when a court may relieve a party from a judgment or order: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b)(1)-(6).

[4] The Rule 60(b) categories are mutually exclusive and to the extent a party moves for relief under solely Rule 60(b)(6) when the basis for relief properly relates to another category, the party's Rule 60(b) motion fails as a matter of law. *Su v. Wilmington Tr., Nat'l Ass'n*, 20-20337, 2021 WL 126415, at *3 (5th Cir. Jan. 13, 2021).

Magistrate Judge issued his Report and Recommendation (Dkt. No. 98), DeSimone attached a January 12, 2021 Declaration of Christopher DeSimone ("**_Late Declaration_**") as Exhibit A to his Objection (Dkt. No. 108-1). The Court should refuse to consider the Late Declaration.[5]

Although district courts have wide discretion when considering a report and recommendation, the Fifth Circuit has set forth factors to guide courts in determining whether to accept additional evidence after a magistrate judge has issued a recommendation. _Performance Autoplex II. Ltd. v. Mid-Continent Cas. Co._, 322 F.3d 847, 862 (5th Cir. 2003). "These [factors] include the moving party's reasons for not submitting the evidence; the importance of the evidence; whether it was previously available; the likelihood of unfair prejudice." _Cont'l Cas. Co. v. Tex. Bridge, Inc._, 1:17-CV-801-RP, 2018 WL 4178331, at *1 (W.D. Tex. July 9, 2018) (applying _Performance_ factors to objection to magistrate judge's report and recommendation). A party's failure to provide a reason for why it neglected to introduce evidence until after the magistrate judge issued his or her recommendation is alone grounds for a district court to disallow such evidence. _Performance_, 322 F.3d at 862;[6] _see also Cont'l Cas. Co. v. Tex. Bridge, Inc._, 1:17-CV-801-RP, 2018 WL 4178331, at *1.

---

[5] BalanceCXI intended to raise this objection to the Late Declaration in its response to DeSimone's Objection (Dkt. 108), but the Court overruled DeSimone's Objection prior to BalanceCXI's deadline to respond under the Amended Scheduling Order (Dkt. 106).

[6] Specifically, the Fifth Circuit stated with respect to a magistrate judge's recommendation that the district court grant summary judgment:

> But Performance did not explain why it did not introduce this evidence originally. Instead, Performance waited to offer this evidence until after it was clear that summary judgment for Mid–Continent would be granted. With Performance providing no reason why it failed to introduce the evidence earlier, the district court clearly did not abuse its discretion in disallowing this evidence.

In his Objection (Dkt. 108), DeSimone articulated no reason whatsoever as to why the Court should consider the Late Declaration—much less why consideration of it is proper under the Fifth Circuit's framework. Indeed, the Fifth Circuit factors all weigh against considering it. In short, the Court should not consider the Late Declaration. And, given the heavy reliance on it in his motion, without it DeSimone's motion for reconsideration is threadbare.

**B. Even if the Court does consider DeSimone's untimely declaration, it is neither credible nor a basis for reconsidering adoption of the Report and Recommendation.**

The Magistrate Judge, having reviewed DeSimone's deposition transcript and then hearing his live testimony, concluded that his "explanation for his actions was lacking in credibility."[7] Undeterred, DeSimone submitted the Late Declaration to this Court, making his third attempt, under oath, to get his story straight. But the multiple contradictions and questionable recollection across each of these efforts support the adoption of the Magistrate Judge's decision that this testimony lacks credibility.

For example, during his deposition, DeSimone had scant recollection of the events that occurred prior to, on, and after April 9, 2019—the date DeSimone began his destruction of evidence. When asked why he connected the Lexar device and other devices to his BalanceCXI computer, DeSimone did not want to "speculate" and could not "recall" due to the passage of time—explaining "this happened a year and a half ago."[8] And when asked about conversations DeSimone had with Oldfield regarding the return of the BalanceCXI computers, DeSimone could

---

[7] *See* Report and Recommendation (Dkt. 98), at p. 10 ("[DeSimone] offered no credible explanation for why he was perusing non-personal, proprietary BalanceCXI data when his alleged purpose was only to remove personal data. Like Oldfield, his explanation for his actions was lacking in credibility.")

[8] Dkt. No. 83-37, DeSimone Deposition at 138:16-139:2.

not recall those conversations because, "It was a year and a half ago."[9] DeSimone was not sure

that April 9, 2019 was the correct date.[10] Critically, DeSimone could not even recall whether he

copied BalanceCXI information:

> **Q.** But as we sit here today, you have no idea whether or not you copied the Zacoustic folders that are highlighted here from your company laptop to the Lexar drive?
>
> **A.** I -- no, I don't recall. This was a year and a half ago.[11]

DeSimone's recall began improving (three days after his deposition) when he testified at the

hearing on BalanceCXI's motion for sanctions—but his memory still contained major gaps.[12]

Now, six months after the hearing, in his Late Declaration, DeSimone offers a minute-by-minute

account of the events of April 9, 2019, testifying to the exact time "7:38AM Eastern Time (6:38AM

Central Time)" he began copying and deleting files as well as the precise sequence of his actions.[13]

The contradictions do not stop there. For example, at his deposition, DeSimone was asked

about his exploration of numerous BalanceCXI files on his BalanceCXI computer on April 9,

2019. DeSimone claimed that the updated "explored dates" for these files—which showed that

DeSimone searched through BalanceCXI information on his company laptop during the same time

he had attached external devices to his company laptop—could have been due to CCleaner.[14] But,

---

[9] Dkt. No. 83-37, DeSimone Deposition at 77:12-22.

[10] Dkt. No. 83-37, DeSimone Deposition at 83:11-21.

[11] Dkt. No. 83-37, DeSimone Deposition, at 97:4-21.

[12] *See, generally*, DeSimone's Objection, Exhibit B (Dkt. No. 108-2), Hearing, at 42:9-66:20.

[13] *See* DeSimone Objection, Exhibit A (Dkt. No. 108-1), DeSimone Declaration, at ¶¶ 12-16.

[14] Dkt. No. 83-37, DeSimone Deposition, at 94:16-21, 95:25-96:5.

then at the hearing, after learning that his story was not technically feasible, DeSimone changed

his testimony, admitting that it was indeed him that explored the BalanceCXI information.[15]

In yet another example, DeSimone changed his testimony regarding his use of his Lexar

device after April 9, 2019. During his deposition, DeSimone could not recall what he did with his

Lexar device after April 9, 2019—whether he used it, plugged it into another computer, synced it

to cloud storage accounts, or copied files from it to another source.[16]  At the hearing, DeSimone

testified that he could not recall whether he copied information from the Lexar Device to any other

place after April 9, 2019:

> **Q.** And after you copied files and folders from your
> company laptop onto that device, you don't recall
> whether or not you used that Lexar device again after
> April 9, 2019. Is that still your testimony?
>
> **A.** I don't recall definitively if I've used it. That's
> correct.
>
> **Q.** You don't recall whether or not you plugged that
> device into any other computer or any other device after
> April 9, 2019.
>
> **A.** Not definitively, no.
>
> ***
>
> **Q.** And that wasn't my question, so I'm going to ask it
> again. So you don't recall whether you copied any
> information from this device, Lexar device, to any other
> device, or cloud storage account, or any other place
> after April 9, 2019. That's my question.
>
> **A.** I wish I could tell you definitively, I would tell
> you, but I do not.[17]

---

[15] DeSimone's Objection, Exhibit B (Dkt. No. 108-2), Hearing, at 48:8-49:4, 49:22-50:24.

[16] Dkt. No. 83-37, DeSimone Deposition, at 150:12-151:21.

[17] DeSimone's Objection, Exhibit B (Dkt. 108-2), Hearing, at 63:21-64:5, 64:19-25.

Yet now, after six months of reflection, DeSimone's Late Declaration states definitively: "I did not access the Lexar Device again after [April 9, 2019]."[18] And his motion to reconsider is equally definitive.[19]

Considering this fluid testimony on the very acts by DeSimone that warranted sanctions, it is no wonder why the Magistrate Judge found his explanation lacking. The Magistrate Judge reviewed DeSimone's deposition testimony and also observed DeSimone's live testimony, which included DeSimone's demeanor on the stand, and found his story was not credible. If the Court considers the Late Declaration, a third bite at the apple from a witness deemed not credible by the Magistrate Judge should have little to no evidentiary value.

## II. The Magistrate Judge's factual conclusions were correct.

### A. The Magistrate Judge did not make erroneous findings of fact.

In his motion, DeSimone identifies a handful of "errors" that he argues the Magistrate Judge made with respect to his findings.[20] But upon closer inspection, these alleged "errors" are immaterial to the issues at stake or actually supported by evidence in the record.

First, on the immaterial side, DeSimone reaches back to 2016 (years before the spoliation at issue here) and argues that the Magistrate Judge committed error by misidentifying the company DeSimone was working for when he first met BalanceCXI.[21] Even if true, this has nothing to do with the issues relevant to this case.[22] DeSimone also quibbles about whether a laptop he gave to

---

[18] *See* DeSimone's Objection, Exhibit A (Dkt. 108-1), DeSimone Declaration, at ¶ 16.

[19] *See* Motion for Reconsideration (Dkt. 116), at p. 6. (claiming that "Mr. DeSimone did not destroy or delete any information from any external drive onto which he copied files from his company computer.").

[20] *See* Motion for Reconsideration (Dkt. 116), at pp. 3-5.

[21] *See* Motion for Reconsideration (Dkt. 116), at p. 3.

[22] To the extent that DeSimone implies that BalanceCXI hired DayBlink, DeSimone is incorrect.

Oldfield was "purchased" or not, arguing that the Magistrate Judge committed error by finding that DeSimone purchased a laptop for Oldfield when DeSimone in fact received that laptop from a third party in exchange for services.[23] Even if DeSimone is right, how Oldfield acquired the laptop he later spoliated is irrelevant.

Similarly, DeSimone asserts that the Magistrate Judge made the erroneous finding that Oldfield was an employee of ICAR.[24] Although this fact is also immaterial, it cannot be classified as "error" when Oldfield swore under penalty of perjury, "I am currently technically an employee of ICAR, and Chris DeSimone is ICAR's managing member."[25]

Turning to facts material to this dispute, DeSimone next argues that the Magistrate Judge's finding that "[t]he examination of the thumb drive showed that on 'December 6, 2019, CCleaner was used to wipe the device'" was mistaken.[26] But this statement is factually correct. And although Oldfield admits to being the one running CCleaner on this fourth tampered-with device, the evidence also supports the inference that DeSimone handed off his Lexar device to Oldfield so that he (the former Chief Technical Officer) could wipe the device on DeSimone's behalf.[27] Importantly, this evidence was destroyed after this lawsuit was filed and after BalanceCXI warned DeSimone against any further efforts to use specialized software to delete files.

DeSimone also argues that there is no evidence in the record that BalanceCXI's counsel sent him a letter requesting the return and preservation of his BalanceCXI computer.[28] But as

---

[23] *See* Motion for Reconsideration (Dkt. 116), at p. 4.

[24] *See* Motion for Reconsideration (Dkt. 116), at p. 3.

[25] Declaration of Adam Oldfield, Dkt. 30-2 at ¶ 1.

[26] *See* Motion for Reconsideration (Dkt. 116), at p. 4.

[27] *See* Report and Recommendation (Dkt. No. 98), at p. 11.

[28] *See* Motion for Reconsideration (Dkt. 116), at pp. 4-5.

discussed in more detail *infra* Section III.A, DeSimone read the Shearman Letter, understood it as applying to him, and received subsequent communication directed to him (prior to his destruction of evidence) that reiterated the preservation instruction.  And even if he did not receive an identical demand letter at his address, he did return his company laptop after his destruction of evidence, showing he understood his obligations (even as he was violating them). In fact, on April 8, 2019, DeSimone's first counsel contacted Dave Whittlesey, who sent the Shearman Letter, on behalf of Oldfield <u>and</u> DeSimone, to advise Whittlesey that DeSimone would return his BalanceCXI laptop and to instruct Whittlesey to tell BalanceCXI it had a duty to preserve evidence.[29]

Finally, again heavily relying on his Late Declaration, DeSimone argues that the Magistrate Judge erroneously found that DeSimone disregarded an instruction to preserve his BalanceCXI computer and affirmatively took steps to permanently delete and wipe data from his BalanceCXI computer and the devices he connected to it, including two instances of doing so on the eve of producing the devices to BalanceCXI.[30] As discussed in detail below, there is more than sufficient evidence to support this factual finding by the Magistrate Judge.

## B. The Magistrate Judge did not impermissibly "lump" Defendants together.

DeSimone claims that the Magistrate Judge "lumps" DeSimone and Oldfield together. Not so. The Magistrate Judge carefully delineated the actions of each Defendant and, where warranted, made separate factual findings with respect to DeSimone and Oldfield.[31] The Magistrate Judge

---

[29] Dkt. No. 83-14.

[30] *See* Motion for Reconsideration (Dkt. 116), at p. 5.

[31] *See, generally*, Report and Recommendation (Dkt. No. 98), at pp. 5-15 (specifically identifying DeSimone and Oldfield by their individual actions for numerous findings).

also separately considered ICAR apart from the actions of DeSimone and Oldfield and denied spoliation sanctions against ICAR (although sanctions were sought against all three Defendants).[32]

DeSimone takes particular issue with the Magistrate Judge's conclusion that both DeSimone and Oldfield were involved in the wiping of DeSimone's Lexar device when it was technically Oldfield who ran the CCleaner on the Lexar device on December 6, 2019. In fact, the evidence supports an inference that DeSimone and Oldfield acted in concert to tamper with the Lexar device. DeSimone only disclosed and produced that Lexar device after BalanceCXI revealed it had discovered it through forensic examination.[33]  It is a reasonable inference that the reason DeSimone gave Oldfield (rather than his attorney) the Lexar device was so that Oldfield (the former Chief Technical Officer of BalanceCXI) could do a better job of covering the tracks of their misdeeds. After all, at DeSimone's request, Oldfield was the one who taught DeSimone how to use CCleaner.[34] At his deposition, DeSimone was "very thankful" that Oldfield educated him on how to use CCleaner so that the deleted information could never be accessed by BalanceCXI.[35]

DeSimone and Oldfield acted in tandem from the time they left their employment through DeSimone's Objection.[36] Now—in a transparent attempt to avoid the gavel—DeSimone casts blame on Oldfield for his own misconduct. This is a change of heart from DeSimone's hearing testimony, where DeSimone at least took some responsibility for his own actions:

> **Q.** Mr. DeSimone, you told me three days ago, Monday of
> this week, that you were very thankful that Adam educated

---

[32] Report and Recommendation (Dkt. No. 98), at p. 15.

[33] *See* Dkt. 83-18.

[34] Dkt. 83-37, DeSimone Deposition, at 101:5-12, 104:17-24, 108:16-19.

[35] Dkt. 83-37, DeSimone Deposition, at 109:24-111:3.

[36] *See, e.g.*, Dkt. 83-12 and 83-26 (discussing their future plans); Dkt. 83-29 (holding themselves out a starting a consulting company together); Dkt. 83-37, DeSimone Deposition at 41:6-42:23 (retaining an attorney together to sue BalanceCXI).

```
you on how to use CCleaner to destroy these files, didn't
you? Those were your words.
```

**A.** I don't think I've contradicted that. I was very
thankful at the time because those files would not have
been deleted like we were advised. However, having
learned all the ramifications of the actions that I took,
I am not very thankful. I'm -- that is, I don't blame
him either. It is my responsibility.[37]

DeSimone's focus on who pressed the button to tamper with his Lexar device is merely an effort to distract from the sanctionable conduct that is undisputedly attributable to DeSimone: (1) DeSimone copied information and then deleted at least 14,000 files from his BalanceCXI computer (while thousands of miles away from Oldfield);[38] (2) DeSimone "lost" the FIT USB device and destroyed the Transcend USB device that he connected to his BalanceCXI computer on April 9, 2019;[39] and (3) DeSimone "lost" the Generic USB device that was connected to his BalanceCXI computer on his second-to-last day of employment with BalanceCXI.[40]

### III.   The Court should continue to adopt the Magistrate Judge's Report and Recommendation because the evidence supports it under the Rule 37(e) standard.

The Federal Rules of Civil Procedure impose a heightened standard for litigation-ending sanctions in the Rule 37(e) spoliation context. As the Magistrate Judge correctly explained, while historically a bad faith or bad conduct finding was required for litigation-ending sanctions under Rule 37(e),[41] the 2015 amendment to Rule 37(e) does not mention "bad faith" and instead only requires a finding of the "intent to deprive another party of the information" to enter a default

---

[37] DeSimone's Objection, Exhibit B (Dkt. No. 108-2), Hearing, at p. 69:18-70:2.

[38] Dkt. 83-1 and 83-3; DeSimone Objection, Exhibit B (Dkt. 108-2), Hearing, at 68:20-69:1.

[39] Dkt. 83-23, DeSimone Interrogatories (Interrogatory Response No. 1).

[40] Dkt. 83-23, DeSimone Interrogatories (Interrogatory Response No. 1).

[41] Report and Recommendation (Dkt. 98), at p. 21 n.8.

judgment for spoliation of evidence.[42] The Magistrate Judge found that, because DeSimone's acted with the intent to deprive <u>and</u> in bad faith, DeSimone met either the historical standard or new standard for default judgment under Rule 37(e) for spoliation of evidence.[43]

### A. There is ample evidence to support the Magistrate Judge's finding that DeSimone anticipated litigation before destroying relevant evidence.

The evidence shows that DeSimone did indeed anticipate litigation prior to and during DeSimone's destruction of evidence. DeSimone argued in his original objection to the Report and Recommendation that from the end of his employment through the morning of April 9, 2019 and for a few weeks after he did not have "any inkling that [BalanceCXI] might sue him for trade secret violations."[44] Yet the evidence shows that DeSimone had much more than an "inkling" that litigation could be coming when he destroyed evidence and used CCleaner to cover his tracks.

Months before destroying evidence, on January 19, 2019, DeSimone began discussing the plan to file a lawsuit (or at the very least threaten one) against BalanceCXI and hiring a lawyer.[45] On April 4, 2019, DeSimone was in the process of finalizing his retention of Kerry O'Brien as his attorney, and DeSimone even appeared wary of "counter claims" by BalanceCXI.[46] Then, BalanceCXI's prior counsel David Whittlesey sent a demand letter on April 5, 2019 (the "***Demand Letter***"), which included in part the following warnings and instructions:

- We have been advised that this computer contains a significant amount of confidential information and other intellectual property belonging to BalanceCXI, including but not limited to the Company's source code. These items are the exclusive property of BalanceCXI, and your continued possession

---

[42] Report and Recommendation (Dkt. 98), at p. 21 n.8.

[43] Report and Recommendation (Dkt. 98), at p. 21 n.8.

[44] DeSimone Objection (Dkt. 108), at p.15.

[45] Dkt. 83-26, DeSimone and Oldfield Text Messages, at Jan 19, 2019 6:11 AM and Jan 19, 2019 6:13 AM.

[46] *See* Dkt. 83-12, WhatsApp Messages, at 4/4/19, 1:47 PM – 4/4/19, 7:19 PM.

of the laptop violates the above-referenced agreements as well as Texas law.

- You must refrain from deleting or modifying any programs, data, or files on the above-referenced laptop computer, as these actions constitute not only spoliation of evidence but also destruction of Company property. You must further refrain from making any copies of any source code, files, programs, or other intellectual property stored on the computer.

- **If the above-referenced items are not received by 5:00 pm CDT on Tuesday, April 9th, the Company intends to take legal measures against you as necessary to ensure the return of its property.**[47]

The evidence shows that DeSimone and Oldfield discussed the Demand Letter on April 5, 2019 in a series of WhatsApp messages.[48] While, true to form with his deposition testimony, DeSimone could not specifically recall that WhatsApp discussion, DeSimone concedes that it was "likely" DeSimone and Oldfield were discussing the Demand Letter.[49] Indeed, in that discussion, DeSimone disputes a claim about his resignation buried on the third page of the Demand Letter:

| Language from Demand Letter | WhatsApp Discussion |
| --- | --- |
| Since your resignation from BalanceCXI on January 15, 2019, you have failed to return your Company laptop computer.[50] | 4/5/19, 4:45 PM – Chris DeSimone: Interesting how they put language saying that you had resigned when we were very clear that we did not and the TWC has already sided in your favor.[51] |

As for DeSimone's argument that the Demand Letter did not apply to him because it was addressed to Oldfield, the evidence shows that DeSimone understood the content of the Demand Letter as applying to DeSimone as well:

---

[47] Dkt. 83-13 (emphasis in original).

[48] Dkt. 83-12, WhatsApp Messages, at 4/5/19, 4:45 PM – 4/5/19, 4:48 PM.

[49] Dkt. 83-37, DeSimone Deposition, at 72:19-75:3.

[50] Dkt. 83-13.

[51] Dkt. 83-12, WhatsApp Messages, at 4/5/19, 4:45 PM.

4/5/19, 4:46 PM – Adam R Oldfield: Wonder why they're not interested in you

4/5/19, 4:48 PM – Chris DeSimone: **I expect the same**[52]

In fact, after retaining his BalanceCXI computer for months after his employment ended, DeSimone engaged counsel and then returned his BalanceCXI computer (after much tampering with it) days after this Demand Letter.

And there can be no question that, after reading the Demand Letter, DeSimone anticipated BalanceCXI bringing claims against him. In his WhatsApp discussion regarding the Demand Letter, DeSimone makes this statement:

4/5/19, 4:45 PM–Chris DeSimone: **Those f[***]ers have the audacity to try to sue**[53]

DeSimone's own words demonstrate that he anticipated litigation with his former employer, BalanceCXI, days before his destruction of relevant evidence.

Even if the Demand Letter did not put DeSimone on notice that he needed to preserve evidence, on the morning of April 9, 2019, BalanceCXI's counsel sent DeSimone's counsel an email reiterating the instruction that DeSimone and Oldfield preserve their BalanceCXI computers:

> Please be advised that your clients are not authorized to delete any files from the computers whether he (or they) contends they are personal or otherwise.
>
> These are company laptops. Your clients are not authorized to delete any files. Please have the company's computers secured and delivered to me immediately without alteration.[54]

---

[52] Dkt. 83-12, WhatsApp Messages, at 4/5/19, 4:46 PM – 4/5/19, 4:48 PM (emphasis added).

[53] Dkt. 83-12, WhatsApp Messages, at 4/5/19, 4:45 PM (emphasis added and expletive omitted).

[54] Dkt. 83-15.

DeSimone's counsel then forwarded that email to DeSimone.[55] Despite receiving that email, DeSimone proceeded to run CCleaner on his BalanceCXI company computer two more times.[56] He then proceeded to destroy or "lose" three external drives, two of which DeSimone had connected to the BalanceCXI computer on April 9, 2019.[57] This does not even count DeSimone's Lexar device that was later tampered-with using CCleaner on December 6, 2019.

DeSimone also argues that there is no evidence that he copied information onto the Generic USB device and Transcend device because the forensic report showed no Shellbags associated with those devices. However, this is misdirection. As the forensic report for DeSimone's BalanceCXI computer notes, Windows does not log files that are copied through dragging and dropping.[58] Because DeSimone destroyed or "lost" those two devices, BalanceCXI has no way to examine those devices to ascertain what information was copied to them. Similarly, citing the forensic report, DeSimone asserts that the last time he accessed the FIT device was on April 9, 2019. But that forensic report was based on an examination of the BalanceCXI computer and, without examination of the FIT device itself (or any computer to which it was later connected), BalanceCXI cannot know whether the FIT device was accessed or connected to additional computers after April 9, 2019. DeSimone "lost" that FIT device and so examination is impossible. The Court should not allow DeSimone to hide behind his own destruction of evidence to claim there is insufficient evidence to support sanctions.

---

[55] Dkt. 83-15.

[56] Dkt. 83-15.

[57] Dkt. 83-23; Dkt. 83-3.

[58] Dkt. 83-3.

DeSimone was on notice that he needed to preserve his BalanceCXI computer, including the information on it and the information DeSimone removed from it. There is ample evidence to support the Magistrate Judge's finding that DeSimone had a duty to preserve evidence before he permanently destroyed it.

**B. The evidence belies DeSimone's claim that he copied and deleted only "personal" information from his BalanceCXI computer.**

DeSimone also reasserts his position that he only copied and deleted "personal" information from his BalanceCXI computer to argue that, based on his counsel's instruction, he had no duty to preserve such "personal" information. But the Magistrate Judge properly found, and the evidence shows, that DeSimone copied more than his "personal" information.

First, DeSimone's definition of "personal" information is broad; he is not referring to only family photos or other types of documents typically considered personal in nature. DeSimone's "personal" information included what DeSimone alleges was his and ICAR's intellectual property:

> **Q.** Well, tell me this: How did you determine what was personal and safe to delete before you returned your Lenovo company laptop to BalanceCXI; how did you define personal?
>
> **A.** Sure. Personal information was information that was mine or ICAR's.
>
> **Q.** Okay. So if it was ICAR information, you would have intended to delete that information before you produced to it BalanceCXI?
>
> **A.** If it was ICAR IP or my IP, I would have intended to copy my personal files and delete them off the Zacoustic computer.[59]

Setting aside legal issues surrounding whether DeSimone or ICAR's claimed intellectual property that was created through their work for BalanceCXI did in fact belong to BalanceCXI,

---

[59] Dkt. 83-37, DeSimone Deposition, at 269:24-270:10.

DeSimone was on notice that <u>all</u> information on BalanceCXI computers was BalanceCXI property. As the Magistrate Judge correctly noted, the BalanceCXI employee handbook stated:

> All information created, sent, received, or stored on the company's electronic resources is company property. Such information is not the private property of any worksite employee and worksite employees should have no expectation of privacy in the use or contents of the company's electronic resources.[60]

The evidence shows that DeSimone acknowledged receipt of the employee handbook (and DeSimone even admitted as much in his Late Declaration).[61] And as the Magistrate Judge found, DeSimone was not just a "line" employee of BalanceCXI but instead one of "the very officers who would be expected to enforce these policies."[62]

Second, as the Magistrate Judge found, DeSimone had no credible explanation for why he was perusing BalanceCXI information on April 9, 2019—while he had external devices connected to and ran CCleaner on his BalanceCXI computer—if he did intend to copy and delete only "personal" information.[63] And, though DeSimone claims he was searching through BalanceCXI information for ICAR intellectual property (which DeSimone considered "personal"), DeSimone did not explore folders labeled ICAR on his BalanceCXI computer.[64]

Finally, although DeSimone now takes the firm position that he in fact copied and deleted only "personal" information, and not BalanceCXI information, his own testimony at the hearing was much more equivocating:

---

[60] Dkt. 83-8.

[61] Dkt. 83-8.

[62] Report and Recommendation (Dkt. 98), at p. 22.

[63] Report and Recommendation (Dkt. 98), at pp. 9-10; DeSimone's Objection, Exhibit B (Dkt. 108-2), Hearing, at 49:5-50:6.

[64] DeSimone's Objection, Exhibit B (Dkt. 108-2), Hearing, at 50:15-51:14.

**Q.** So I'm not asking you to interpret the forensic report. I'm asking you if you deleted these files on April 9, 2019 or not.

**A.** The best that I can tell you is that if there are files that I perceive that I copied that were Balance CXI's, looking back, I should have retained those. On 4-9, I would have deleted those. It looks like CCleaner was run on my device, you know, before it was handed back. And so, I can only tell you my actions, and my actions were if I had downloaded something on 4-9 that I perceived I either didn't need that was personal or was Balance CXI, I deleted that.[65]

BalanceCXI actually <u>found</u> BalanceCXI information on the (tampered-with) Lexar device that DeSimone finally produced, which was connected to his BalanceCXI computer on April 9, 2019.[66] This included the "Zacoustic Playbook," "Zacoustic Simulator," and "BalanceCXI Competitive Analysis" among other BalanceCXI information.[67]

To the extent that only copying and deleting alleged "personal" information from a BalanceCXI computer could affect DeSimone's duty to preserve evidence, the Magistrate Judge correctly found DeSimone's explanation that he copied and deleted only "personal" information not credible.[68] There is also ample evidence to support that DeSimone did in fact copy and delete BalanceCXI information from his BalanceCXI computer on April 9, 2019. The Magistrate Judge was right to find that "[t]here is only one reasonable conclusion from these actions: after leaving their employment, it is highly likely that the Defendants did in fact copy BalanceCXI's data from their company laptops onto storage devices and retain it after returning the laptops."[69]

---

[65] DeSimone's Objection, Exhibit B (Dkt. 108-2), Hearing, at 73:18-74:4.

[66] Dkt. 83-5; Dkt. 83-37, DeSimone Deposition, at 112:24-119:3.

[67] Dkt. 83-5; Dkt. 83-37, DeSimone Deposition, at 112:24-119:3.

[68] Report and Recommendation (Dkt. 98), at pp. 9-10.

[69] Report and Recommendation (Dkt. No. 98), at pp. 23-24.

C. **The evidence supports the Magistrate Judge's finding that DeSimone intentionally destroyed evidence for the purpose of depriving BalanceCXI of it.**

DeSimone argues that there was insufficient evidence to support the Magistrate Judge's finding that DeSimone acted with the intent to destroy evidence. A default judgment for spoliation is appropriate upon a finding that DeSimone "acted with the intent to deprive" BalanceCXI of electronically stored information. *See* FED. R. CIV. P. 37(e)(2); *see also Arya Risk Mgmt. Sys., Pvt. Ltd. v. Dufossat Capital Puerto Rico, LLC*, CV H-16-3595, 2019 WL 4686575, at *1 (S.D. Tex. Sept. 26, 2019) ("The court also affirms the magistrate judge's finding that [plaintiff] intentionally deleted the four laptop computers' hard drives for the purpose of depriving Defendants of the information stored thereon."). As the Magistrate Judge found, DeSimone destroyed evidence on the eve of producing it to BalanceCXI, which is evidence of DeSimone's intent to deprive. *See Lexpath Techs. Holdings, Inc. v. Welch*, No. 13-CV-5379-PGS-LHG, 2016 WL 4544344, at *5 (D.N.J. Aug. 30, 2016) (finding that the timing of the defendant's deletion of responsive documents a few days after the plaintiff sent a cease-and-desist letter was "especially telling" and supported a finding of an intent to deprive).

But, in this case, no inference is needed because DeSimone admitted that he specifically selected files on the BalanceCXI computer and then used CCleaner to destroy the information so that BalanceCXI would not have it:

> **Q.** So you selected certain files off of your Lenovo company laptop to delete with CCleaner. Is that right?
>
> **A.** I selected certain files off of my computer to copy my personal files to copy and -- and then delete with CCleaner. CCleaner.
>
> **Q.** And you understood that once you deleted files -- those files off your Lenovo company laptop with CCleaner, those files would not be able to be accessed by BalanceCXI. Is that right?

**A.** Again, I'll repeat myself. My intent was to copy my personal information and then delete it, per the counsel of my attorney. And so yes, I wanted those files to be permanently deleted so they could not be accessed by Zacoustic.[70]

DeSimone's own testimony acknowledges, and the Magistrate Judge correctly found, that DeSimone acted with the intent to deprive BalanceCXI of the information he destroyed.

## CONCLUSION AND PRAYER

DeSimone has not asserted any exceptional circumstances or manifest injustice to warrant relief under Rule 60(b)(6). And the evidence supports the Court's adoption of the Report and Recommendation. The Court should overrule Defendant DeSimone's Motion for Reconsideration and grant BalanceCXI any other relief to which it is entitled.

Dated: March 10, 2021.

Respectfully submitted,

*/s/ Adam H. Sencenbaugh*
Adam H. Sencenbaugh
State Bar No. 24060584
adam.sencenbaugh@haynesboone.com
J. Iris Gibson
State Bar No. 24037571
iris.gibson@haynesboone.com
Henson Adams
State Bar No. 24101418
henson.adams@haynesboone.com
HAYNES AND BOONE, L.L.P.
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:  512-867-8400
Facsimile:  512-867-8470

**ATTORNEYS FOR BALANCECXI, INC. D/B/A ZACOUSTIC**

---

[70] Dkt. 83-37, DeSimone Deposition, at 112:4-18.

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 10, 2021, a copy of the foregoing instrument was served on counsel of record in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules.

*/s/ Henson Adams*
Henson Adams

4833-2469-7311